Attorneys for Appellant

F. Boyd Hovde

Regina M. Poore

Indianapolis, Indiana

Attorney for Amicus Curiae

Indiana Trial Lawyer Association

Jerry Garau

Indianapolis, Indiana

Attorney for Appellee Commissioner of Insurance of the State of Indiana

Matthew W. Conner

Indianapolis, Indiana

Attorney for Appellees Martin E. Feferman, M.D., and Physicians Insurance Company of Indiana

Robert J. Palmer

South Bend, Indiana

James F. Bleeke

Indianapolis, Indiana

IN THE

INDIANA SUPREME COURT

HELEN M. POEHLMAN, )

Appellant (Plaintiff below), )

)

v. )

)

MARTIN E. FEFERMAN, M.D. )

Appellee (Defendant below). )

)

)

HELEN M. POEHLMAN, )

Appellant (Plaintiff below), )

) Supreme Court No.

v. ) 71S05-9810-CV-597

)

MARTIN E. FEFERMAN, M.D., ) Court of Appeals No.

PHYSICIANS INSURANCE COMPANY ) 71A05-9709-CV-384

OF INDIANA and MARJORIE MAGINN )

Commissioner of Insurance of the State of )

Indiana, )

Appellees (Defendants below). )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT

The Honorable William C. Whitman, Judge

Cause Nos. 71D02-9209-CP-00729 & 71D04-9612-CT-00337

ON PETITION TO TRANSFER

October 7, 1999

SULLIVAN,  Justice.

The plaintiff in this medical malpractice case was awarded $345,263 in damages plus post-judgment interest and court costs.  The parties disagree over whether the malpractice act’s liability limits apply to damages only or also to the interest and costs and over how to allocate those expenses between the doctor and patient’s compensation fund.  We hold that the interest and costs are recoverable from the doctor and the fund irrespective of the malpractice act’s limits. 

Background
 

On April 4, 1996, Plaintiff Helen M. Poehlman received a judgment from the St. Joseph Superior Court in the amount of $345,263 plus court costs against Defendant, Martin E. Feferman, M.D., for medical malpractice.  Dr. Feferman is a health care provider qualified under the Indiana Medical Malpractice Act, Ind. Code § 27-12-1-1 et seq. (“Act”) and was covered by a policy of professional liability insurance with Physicians Insurance Company of Indiana (“PICI”).  On August 30, 1996, PICI paid $103,733.09 to the St. Joseph County Clerk to satisfy the portion of the judgment that Feferman owed pursuant to the Act.  This sum represented the $100,000 that Feferman owed as a qualified health care provider under the Act’s recovery limitation section,
(footnote: 1)  Ind. Code § 27-12-14-3(b), together with $3,331.84 in post-judgment interest and $401.25 in court costs.  

On September 5, 1996, Poehlman filed a petition for payment of damages from the Patient’s Compensation Fund (“Fund”) and a declaration as to the interest liability of Feferman, PICI, and the Fund.  On September 11, 1998, Feferman demanded that Poehlman release the judgment against him on the basis of his payment to the clerk.  When Poehlman did not respond to this demand, Feferman filed a petition to release the judgment.  

Poehlman filed suit against Feferman, PICI, and the Insurance Commissioner who manages the Fund on October 15, 1996.  Poehlman sought a declaratory judgment stating that interest was due pursuant to Indiana’s “Post-Judgment Interest Statute,” Ind. Code § 24-4.6-1-101.  The trial court eventually consolidated Poehlman's declaratory action with Feferman’s petition to release the judgment.  On December 4, 1996, by a stipulation of the parties, the St. Joseph County Clerk released $100,000 of the money paid by PICI, on behalf of Feferman, to Poehlman.  The stipulation did not resolve, however, the amount of post-judgment interest, if any, that Feferman owed on the judgment.  On or about January 15, 1997, the Insurance Commissioner paid $245,263 to Poehlman, which represented the unpaid balance of Poehlman’s judgment against Feferman, exclusive of any post-judgment interest or court costs.  

The parties submitted written briefs to the trial court on the issue of post-judgment interest.  On May 21, 1997, the court ruled that: (1) Poehlman was 
not
 entitled to post-judgment interest from any of the three defendants; (2) Poehlman was entitled to $401.25 in court costs from Feferman; and the Insurance Commissioner was not required to pay any additional amount.  The trial court deferred ruling on Feferman’s petition to release the judgment, believing that its ruling on the other matters had resolved the issue.  

Poehlman appealed the trial court’s declaration as to the various interest obligations.  Feferman and PICI cross-appealed the assessment of the $401.25 in court costs and the trial court's failure to rule on Feferman’s petition.  The Court of Appeals affirmed the trial court’s decision to defer ruling on Feferman’s petition, but reversed the trial court on the payment of interests and costs, concluding that the Insurance Commissioner (i.e., the Fund) was responsible for the payment of post-judgment interest on the entire amount of the judgment, as well as the payment of court costs.  
Poehlman v. Feferman
, 693 N.E.2d 1355 (Ind. Ct. App. 1998). 

Discussion

I

The recovery limitation section of the Act sets forth specific “amounts” which medical malpractice recoveries may not exceed.  The Court of Appeals held that these “amount” limitations were “solid liability caps” that limited not only damages for malpractice but limited post-judgment interest and court costs as well.  We are required to determine the meaning of the phrase “amount recoverable for an injury or death of a patient” as it appears in the Act’s recovery limitation section. 

In regulating medical malpractice judgments, the legislature first capped “the total amount recoverable for an injury or death” at $750,000.  Ind. Code § 27-12-14-3(a).  Next, the legislature apportioned this liability by assigning the first $100,000 “amount” to the qualified health care provider, 
id.
 § 27-12-14-3(b), with the remaining “amount due from a judgment or settlement” to be paid from the Patient’s Compensation Fund, 
id.
 § 27-12-14-3(c).  

The Court of Appeals reasoned that because the “Recovery Limitation Section does not qualify the term ‘amount’ to include only certain types of damages, costs, fees, or interest . . . [, t]he plain language of the section sets a solid liability cap without any qualification” on (1) the liability potentially owed by qualified health care provider, and (2) the $750,000 total limit on the Fund’s liability.  
Poehlman
, 693 N.E.2d at 1359-60.  

When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense.  
State Bd. of Tax Comm’rs v. Jewell Grain Co.
, 556 N.E.2d 920, 921 (Ind. 1990).   Clear and unambiguous statutory meaning leaves no room for judicial construction.  
Community Hosp. of Anderson & Madison County v. McKnight
, 493 N.E.2d 775, 777 (Ind. 1986) (refusing to construe the Medical Malpractice Act as requiring the appointment of a special representative under the Wrongful Death Act because “[t]he Medical Malpractice Act is plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivative claims”).  

We disagree with the Court of Appeals’s determination that these limits on amounts “recoverable for an injury or death of a patient” also constitute limits on collateral financial obligations associated with litigation generally such as post-judgment interest and court costs.  These collateral litigation expenses arise separately by operation of law and are regulated under distinct statutes,
(footnote: 2) which guide parties’ decisions in nearly every stage of either pursuing or defending medical malpractice claims under the Act.   To conclude that the statute establishes “solid liability caps” is to create a separate set of rules for the allocation of these expenses in litigating what remain essentially tort suits notwithstanding the passage of the Act. 

We find that the plain, ordinary, and usual meaning of the phrase “amount recoverable for an injury or death of a patient” as it appears in the Act’s recovery limitation section unambiguously establishes that the legislature intended to only limit the amount of 
damages
, not collateral litigation expenses.
(footnote: 3)

Even if we were not to conclude that the plain, ordinary and usual meaning of the phrase “amount recoverable for an injury or death of a patient” refers only to damages and not collateral litigation expenses, another canon of statutory construction supports this result as we attempt “to determine, effect and implement the intent of the legislature.” 
Melrose v. Capitol City Motor Lodge, Inc.
, 705 N.E.2d 985, 989 (Ind. 1998) (collecting cases).   

We have long embraced the rule that if a statute is susceptible to more than one interpretation, this Court may consider the consequences of a particular construction.  
Superior Constr. Co. v. Carr
, 564 N.E.2d 281, 284 (Ind. 1990); 
Economy Oil Corp. v. Indiana Dep’t of State Revenue
,  162 Ind. App. 658, 664, 321 N.E.2d 215, 218 (1974) (collecting cases).  In applying this rule, we recognize a strong presumption that when the legislature enacted a particular piece of legislation, it was aware of existing statutes relating to the same subject.  
Glick v. Department of Commerce
, 180 Ind. App. 12, 18, 387 N.E.2d 74, 78 (1979).  

The Medical Malpractice Act is silent as to any 
direct effect
 on the post-judgment interest statute and other statutes regulating similar collateral litigation expenses.  If the legislature had intended for the Medical Malpractice Act to trump the effect of these various statutes, it could have done so explicitly.  For example, it chose to exempt only the Fund, not the health care provider, from the provisions of Indiana’s Pre-Judgment Interest Statute.  Ind. Code § 34-4-37-4 (1993) (“This chapter does not apply to a claim against the patient's compensation fund . . . .”) (current version at Ind. Code § 34-51-4-2 (1998)); 
cf.
 
id.
 § 24-4.6-1-101 (1993) (Regulating post-judgment interest “except as otherwise provided by statute.”); 
id.
 § 34-1-32-1 (1993) (Regulating the assignment of co­­­sts in civil actions “[e]xcept in those cases in which a different provision is made by law.”). 

 Having determined that the Act limits only damage amounts, we must next decide who is responsible for paying the interest, costs and other expenses which we have been referring to as “collateral litigation expenses.”

II

When this Court was initially called upon to decide the constitutionality of various provisions of the Indiana Medical Malpractice Act, we recognized that the legislature had been “undoubtedly moved . . . [by] its appraisal that the services of health care providers were being threatened and curtailed contrary to the health interests of the community.”  
Johnson v. St. Vincent Hosp., Inc.
, 404 N.E.2d 585, 594 (Ind. 1980).  We noted that the “[l]egislature responded with [the] Act in an effort to preserve those services and thereby to protect the public health and well[-]being of the community.”  
Id.
 at 590.  The result was that various provisions of the Act modified the “nature and extent” of the “common law legal duty” as it previously existed “between a health care provider and patient”  
Id.
 at 594.  One of the more substantial modifications of this traditional “health care provider-patient” relationship came about as a result of legislature’s efforts to limit the potential medical malpractice liability.  This was accomplished in two ways:  First, the legislature set an outer limit on liability for damages, and second, it apportioned this liability between the health care provider and the newly created Patient’s Compensation Fund.

In apportioning this potential liability, however, the legislature created the possibility for two distinct and independent judgment debtors in any case involving a medical malpractice settlement or judgment greater than $100,000:  (1) the health care provider (or its insurer) and (2) the Insurance Commissioner who administers the Patient’s Compensation Fund.  A victim of medical malpractice who has been injured to an extent greater than $100,000 would henceforth be required to seek payment from two separate entities in order to achieve full compensation.

In any particular case, the health care provider or the Insurance Commissioner may develop an entirely different litigation strategy from the other, including a different strategy as to such matters as pre-judgment settlement and post-judgment debt payment.  As a result, a plaintiff with a meritorious claim may nevertheless have to wait years between payments from the qualified health care provider and the Fund as one or the other may, on the one hand, settle, or, on the other, appeal.  Indeed, two of our recent cases illustrate the bifurcated nature of the process.  
See, e.g.
, 
Wisniewski v. Bennett
, 1999 WL 756920, No. 45S05-9909-CV-00497 (Ind. Sept. 24, 1999) (holding that an agreement to settle by payment with a health care provider who has not paid into the Fund and is not an insurer as defined by the Act does not meet the requirements for access to the fund); 
Smith v. Pancner
, 679 N.E.2d 893, 896 (Ind. 1997) (holding that the payment by the insurer of a non-qualified health care provider who agreed to settle was insufficient to access the fund).  Delays resulting from appeals or other procedural maneuvers will generate collateral litigation expenses 
in differing amounts
 for the health care provider or the Insurance Commissioner depending upon which litigation strategy each pursues.

In deciding which entity is responsible for the payment of these collateral litigation expenses, the Court of Appeals held “that a qualified health care provider under the Act is not liable for 
any
 amount in excess of $100,000.”  
Poehlman
, 693 N.E.2d at 1359 (emphasis in original).  This interpretation, as the Court of Appeals acknowledged, results in the Insurance Commissioner paying the health care provider’s collateral litigation expenses in the event that a medical malpractice victim obtains a settlement or judgment near to, even with, or greater than the $100,000 limit.
(footnote: 4)  We believe this approach gives the health care provider a blank check to run up collateral litigation expenses to be subsidized with the monies of the Patient’s Compensation Fund.  The legislature could have never intended such a result.  

Insofar as the Act creates the potential for distinct and independent judgment debtors generating collateral litigation expenses in differing amounts dependant upon the procedural course of action they pursue, we find that each judgment debtor is 
individually responsible
 for its collateral litigation expenses.  We find this to be the case even when these collateral litigation expenses are added to a settlement or judgment figure and the resultant total exceeds the Act’s statutory damage limits. 

III

Indiana Code § 24-4.6-1-101 (“Post-Judgment Interest Statute”) provides in relevant part that “[e]xcept as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of return of the verdict or finding of the court until satisfaction at [a specified interest rate].”   Thus, it has been the intention of the law in this State for nearly 25 years that there should be an incentive on the part of judgment debtors to satisfy expeditiously their debt obligations to avoid this accrual of interest.
(footnote: 5)  The incentive begins on 
the day
 that a money judgment is entered by the trial court as the interest immediately begins accruing. This obligation to pay post-judgment interest is part and parcel of the obligation to pay a money judgment, and those finding themselves on the wrong side of the law after trial must decide whether to limit their liability and pay up or risk incurring further liability in the form of accruing interest if not successful on appeal. 

If a “qualified health care provider under the Act is not liable for 
any
 amount in excess of $100,000, including post-judgment interest,”  
Poehlman
, 693 N.E.2d at 1359 (emphasis in original), the provider has no incentive to satisfy timely its debt obligations at, near, or over the $100,000 limit.  Similarly, if the “Fund is not required to pay any amount over the total liability limit of $750,000,” 
id.
 at 1360, the Insurance Commissioner also has no such incentive.

In the absence of express legislative intent to discount the payment of debts owed to medical malpractice victims, we find that the payment incentives undergirding Indiana’s Post-Judgment Interest Statute are fully applicable to a judgment rendered 
in any amount
 under the Act, against both the qualified health care provider and the Fund.
(footnote: 6)  

Conclusion

We conclude that: (1) the limitations set forth in the recovery limitation section of the Act are limitations on damage amounts, not collateral litigation expenses; (2) each judgment debtor is 
individually responsible
 for its own collateral litigation expenses associated with its settlement or judgment figure, irrespective of whether the total figure exceeds the Act’s statutory damage limits, and (3) Indiana’s Post-Judgment Interest Statute fully applies to medical malpractice judgments. 

Having previously granted transfer, we now (1) adopt and incorporate by reference Part II of the Court of Appeals’s opinion addressing the issue of appointing a commissioner;  (2) vacate the remainder of the opinion of the Court of Appeals;  and (3) remand to the trial court for further proceedings consistent with this opinion to the effect that: (a) Defendant Martin E. Feferman (or in the alternative, his insurer, PICI) is responsible for the payment of post-judgment interest on $100,000 from date of judgment until tender of payment plus $401.25 in court costs, and (b) the Fund is responsible for the payment of post-judgment interest on the remainder of damages in the amount of $245,263 from the first biannual payment date applicable to Poehlman’s claim until the balance is paid. 

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.  

FOOTNOTES
1: The relevant text of the recovery limitation section is as follows:

(a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

(b) A health care provider qualified under this article is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.

(c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient’s compensation fund under IC 27-12-15.

Ind. Code § 27-12-14-3(a)-(c) (1993) (repealed by P.L. 1-1998) (current version at Ind. Code § 34-18-14-3 (1998)).  
We note that effective July 1, 1999, the legislature expanded the upper liability limit on damages to “[o]ne million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999.”  Ind. Code § 34-18-14-3 (1998).

2: 
See, e.g.
, Ind. Appellate Rule 15(H) (regulating appellate costs); Ind. Code § 34-52-1-1 (1998) (formerly Ind. Code § 34-1-32-1) (regulating co­­­sts in civil actions); 
id.
 § 34-51-4 (formerly Ind. Code § 34-4-37) (regulating pre-judgment interest); 
id.
 § 24-4.6-1 (regulating post-judgment interest). 

3: This determination is in harmony with our initial characterization in 
Johnson v. St. Vincent Hospital, Inc.
 as to the recovery limitations imposed by the Act.  We recognized that the legislature was concerned with “the proper manner of apportioning the 
total damages
 among health care providers, their insurers, and the patient’s compensation fund.”  404 N.E.2d 585, 602 (Ind. 1980) (emphasis added).

4: This interpretation also produces the result that a malpractice victim who has received a settlement or judgment at or above the $750,000 limit is not entitled to recover any collateral litigation expenses.

5: While the Court of Appeals correctly determined that the Post-Judgment Interest Statute applies to a judgment rendered under the Medical Malpractice Act, it also determined that the practical effect of this application ends at the $100,000 limit for the health care provider (deciding that the Fund pays the post-judgment interest above this amount), and at the $750,000 limit for the Fund (holding that not even the Fund is required to pay post-judgment interest on any amount above the total limit).  

6: We do note, however, that a successful claimant under the Act must first submit a certified copy of the judgment against the health care provider to the Commissioner to initiate a claim against the Fund.  Ind. Code § 27-12-6-5 (1993) (current version at Ind. Code § 34-18-6-5 (1998)).  Also, the Fund enjoys a brief “grace period” from the accrual of post-judgment interest in that 

[c]laims for payment from the patient’s compensation fund that become final during the first six (6) months of the calendar year must be computed on June 30 and must be paid not later than the following July 15.  Claims for payment from the fund that become final during the last six (6) months of the calendar year must be computed on December 31 and must be paid not later than the following January 15. 

Id.
 § 27-12-6-4(a).  Thus, interest will only begin to accrue on the Fund’s debt obligation beginning on the first biannual payment date applicable to the claim. We note that this biannual payment procedure, whereby the Insurance Commissioner can withhold immediate payment from the Fund, is consistent with the express legislative i­ntent that “the fund and any income from the fund shall be held in trust . . . and invested, and reinvested.”  
Id.
 § 27-12-6-1(b).