**Pete GRUBNICH, D.D.S., and Unknown Dental Employees of Pete Grubnich, D.D.S., Appellants–Defendants,**

v.

**Betty L. RENNER and Richard W. Renner, Sr., Appellees–Plaintiffs.**

No. 45A05–0011–CV–500.

Court of Appeals of Indiana.

April 10, 2001.

David C. Jensen, Alyssa Stamatakos, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellants.

Priscilla A. Herochik, Merrillville, IN, Attorney for Appellees.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Pete Grubnich, D.D.S. ("Grubnich") appeals the award of post-judgment interest to appellees-plaintiffs Betty L. Renner and Richard W. Renner, Sr. ("the Renners"). The Renners cross-appeal the denial of sanctions and attorney fees. We affirm.

### Issues

Grubnich presents three issues for our review, which we restate as follows:

I.  whether the trial court lacked jurisdiction to award post-judgment interest three years after final judgment on the jury verdict;

II.  whether the trial court improperly relied on a change in case law as the basis for awarding post-judgment interest; and

III.  whether the Renners were entitled to interest on the post-judgment interest.

The Renners raise one issue in their cross-appeal, which we restate as whether the trial court erred in denying sanctions, including attorney fees.

### Facts and Procedural History

On February 12, 1997, a jury returned a verdict in favor of the Renners awarding them $150,000 in damages on their dental malpractice claim against Grubnich. Under the Medical Malpractice Act, Grubnich's liability was limited to $100,000, and the Patient's Compensation Fund ("the Fund") was liable for the remaining $50,000. IND.CODE § 27–12–14–3 (current version at IND.CODE § 34–18–14–3 (1998)). The court entered judgment on the verdict, and Grubnich appealed. On September 28, 1998, a panel of this court affirmed the judgment, and the supreme court denied transfer on March 2, 1999. On March 8, 1999, Grubnich filed a notice of payment of judgment and paid $100,000 to the clerk of the court. On March 12, 1999, the Renners filed a partial satisfaction of judgment for the amount of $100,000 and reserved their right to the remainder of the judgment from the Fund [1] as well as their right to post-judgment interest and costs from either Grubnich or the Fund or both. The Renners also requested a bond for the remaining costs and interest. On April 19, 1999, the trial court denied the Renners' request for bond based on this court's opinion in *Poehlman v. Feferman*, 693 N.E.2d 1355 (Ind.Ct.App.1998) ("*Poehl-*

---

1.  *See* IND.CODE § 34–18–4–3(c) ("Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers ... shall be paid from the patient's compensation fund ....") (formerly IND.CODE § 27–12–14–3).

man I"), aff'd in part, vacated in part, 717 N.E.2d 578 (Ind.1999) ("Poehlman II"), which had been vacated by the supreme court's grant of transfer on October 13, 1998.

In December 1999, after the supreme court issued its decision in Poehlman II providing that each defendant was responsible for post-judgment interest on its judgment for damages, the Renners requested payment of post-judgment interest from Grubnich and the Fund on their respective liabilities. The Fund paid its portion of the interest on January 21, 2000; however, Grubnich refused to pay. On March 20, 2000, the Renners filed a motion for costs and post-judgment interest. They also sought attorney fees pursuant to Indiana Code Section 34–52–1–1, claiming that Grubnich's defense was frivolous, groundless, or unreasonable. Grubnich argued that Poehlman II did not apply to this case because it was decided after final judgment was entered in March 1999. Thus, Grubnich argued that Poehlman II was a change in the law that could not be applied retroactively. On August 22, 2000, the trial court granted the Renners' motion for post-judgment interest and denied their request for attorney fees.

### Discussion and Decision

#### I. Jurisdiction

■■■ First, Grubnich·contends that because final judgment had been entered, the trial court lacked subject matter jurisdiction[2] and could not award post-judgment interest approximately three years after the judgment. Specifically, Grubnich argues that the trial court did not enter an award of post-judgment interest at the time it entered judgment. The Renners counter that the right to post-judgment interest is provided by statute and that it is therefore unnecessary for the trial court to order specifically an award of post-judgment interest at the time it enters final judgment.

■■ Indiana Code Section 24–4.6–1–101 states:

> Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:
>
> . . .
>
> (2) an annual rate of eight percent (8%) if there was no contract by the parties.

The right to post-judgment interest arises as a matter of statutory law. IND.CODE § 24–4.6–1–101; see Caldwell v. Black, 727 N.E.2d 1097, 1100 (Ind.Ct.App.2000) (noting that "post-judgment interest is statutorily mandated for money judgments"). Contrary to Grubnich's contentions, the trial court is not required to include an order for post-judgment interest in its judgment. See Caldwell, 727 N.E.2d at 1100 (stating that "the Interest on Money

---

**2.** We note that Grubnich's jurisdictional argument should have been premised on a lack of jurisdiction over the particular case, rather than a lack of subject matter jurisdiction. "Subject matter jurisdiction is the power of a court to hear a class of cases, while jurisdiction over the case is the power of a court to hear a particular case within the class of cases over which the court has subject matter jurisdiction." Dixon v. Siwy, 661 N.E.2d 600, 605 n. 10 (Ind.Ct.App.1996). "When a court lacks jurisdiction over the particular case, the judgment is voidable, requiring proper and timely objection to the court's exercise of jurisdiction or it is waived." Sanders v. Carson, 645 N.E.2d 1141, 1145 (Ind.Ct.App.1995). Grubnich has waived his jurisdictional argument by failing to raise it at the earliest opportunity—at the time of the trial court's March 9, 1999 order. See Harp v. Indiana Dep't of Highways, 585 N.E.2d 652, 659 (Ind. Ct.App.1992) ("Challenges to a trial court's jurisdiction over the particular case must be raised at the first opportunity to avoid waiver."). Nevertheless, we address Grubnich's jurisdictional argument on the merits.

Judgments Statute provides post-judgment interest, at the current statutory rate of eight percent per year, following a judicial determination of arrearage *without the necessity of a specific request for interest"* (emphasis added)); *see also Indiana Revenue Bd. v. State ex rel. Bd. of Comm'rs of Hendricks County,* 270 Ind. 365, 370, 385 N.E.2d 1131, 1134 (1979) ("Since a permissible suit was maintained against a board of the state and since a money judgment was authorized by law to be paid, it is axiomatic that interest attached pursuant to the language within Ind.Code § [34–54–8–5]."); *Poehlman,* 717 N.E.2d at 583 ("This obligation to pay post-judgment interest is part and parcel of the obligation to pay a money judgment, and those finding themselves on the wrong side of the law after trial must decide whether to limit their liability and pay up or risk incurring further liability in the form of accruing interest if not successful on appeal."); *cf. Miller v. Artistic Cleaners,* 153 F.3d 781, 785 (7th Cir.1998) ("[R]egardless of whether there is any reference to postjudgment interest in the pleadings, a court's order, or the entry of a money judgment, a prevailing plaintiff in federal court is automatically entitled to postjudgment interest."); *Ward v. Tipton County Sheriff Dep't,* 937 F.Supp. 791, 800 (S.D.Ind.1996) ("Post-judgment interest is statutorily required, and the court need not make a separate award for plaintiff to collect it."); *Felton v. Board of Comm'rs of the County of Greene,* 853 F.Supp. 1099, 1100 (S.D.Ind. 1994) (noting that statute " 'entitles the prevailing plaintiff in a federal suit ... to postjudgment interest at a rate fixed in the statute, whether or not there is an award of interest in the judgment, ... or even a request for interest in the complaint' " (quoting *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1104 (7th Cir.1990))). Indeed, the language of the statute does not require a specific award of post-judgment interest.

▪ Hence, the Renners' right to post-judgment interest arose on February 12, 1997, the date of the jury verdict. *See* IND.CODE § 24–4.6–1–101 (providing that "interest on judgments for money whenever rendered shall be from the *date of the return of the verdict"* (emphasis added)). Their motion for costs and post-judgment interest in March 2000 was simply a request that the trial court enforce the judgment.[3] "Courts have inherent power to entertain an action to determine whether a judgment has been carried out and satisfied." *United Farm Bureau Mut. Ins. Co. v. Ira,* 577 N.E.2d 588, 592 (Ind.Ct.App. 1991), *trans. denied.* Thus, the August 2000 order requiring Grubnich to pay post-judgment interest was within the court's jurisdiction. *See Bitner v. Hull,* 695 N.E.2d 181, 183 (Ind.Ct.App.1998) (rejecting appellant's argument that the trial court lacked jurisdiction to alter its decree of dissolution because ninety days had passed since the judgment was entered and concluding that trial courts have inherent power to issue orders to enforce judgments). Having determined that the trial court had jurisdiction over the Renners' claim, we address the applicable law in determining the party responsible for post-judgment interest.

---

**3.** We view the Renners' motion as a motion for proceedings supplemental. *See Stuard v. Jackson & Wickliff Auctioneers, Inc.,* 670 N.E.2d 953, 954 (Ind.Ct.App.1996) ("Proceedings supplemental, pursuant to Ind.Trial Rule 69, are a means used to remedy a failure by a defendant to pay a money judgment."); *Gal-lant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223, 1229 (Ind.Ct.App.1999) ("Proceedings supplemental are merely a continuation of the underlying claim initiated under the same cause number for purposes of enforcing a judgment.").

## II. Post–Judgment Interest

■ Second, Grubnich contends that the trial court erred in awarding post-judgment interest to the Renners. Specifically, Grubnich argues that the trial court's reliance on *Poehlman II* was improper because *Poehlman II* changed the law and was decided *after* the Renners' claim against Grubnich had been finally determined and that the retroactive application of *Poehlman II* was therefore error.

The trial court entered judgment in favor of the Renners for $150,000 on February 12, 1997. On April 27, 1998, in *Poehlman I*, a panel of this court held that although medical malpractice plaintiffs may recover post-judgment interest, a defendant doctor's liability is limited to $100,000 under the Medical Malpractice Act. *Poehlman I*, 693 N.E.2d at 1359. Thus, the *Poehlman I* court concluded that recovery of damages and post-judgment interest exceeding $100,000 could only be obtained from the Fund. *Id.* at 1360. The supreme court granted transfer in *Poehlman I* on October 13, 1998, thereby vacating the opinion.

Grubnich appealed the trial court's judgment, which was affirmed by this court. Our supreme court denied transfer on March 2, 1999, thereby ending Grubnich's appeal. Grubnich paid $100,000 on March 8, 1999. On March 9, 1999, the trial court entered an order acknowledging receipt of the payment as partial satisfaction of the judgment. The Renners specifically reserved their right to obtain the remainder of the judgment from the Fund in the amount of $50,000, as well as their right to post-judgment interest and costs from either Grubnich or the Fund or both. Based on the holding of *Poehlman I*, Grubnich argued that he had satisfied his portion of the judgment and could not be held liable for post-judgment interest. However, as noted above, *Poehlman I* had been vacated, and Grubnich's reliance on it was therefore improper. *See Meyer v. Biedron*, 667 N.E.2d 752, 753 (Ind.1996) (noting that court of appeals' opinion was vacated by grant of transfer and thus had no precedential value); Ind. Appellate Rule 11(B)(3) ("If transfer be granted, the judgment and opinion or memorandum decision of the Court of Appeals shall thereupon be vacated and held for naught. . . .").[4]

On October 7, 1999, our supreme court issued its opinion in *Poehlman II. See* 717 N.E.2d 578. The court held that the $100,000 liability limit provided by the Medical Malpractice Act is applicable to an award of damages; it does not apply to post-judgment interest and costs. *Poehlman II*, 717 N.E.2d at 582. Thus, each defendant (the doctor and the Fund) is required to pay the post-judgment interest accrued on the underlying damage award. *Id.* at 583. On March 20, 2000, the Renners filed a motion for order of costs and post-judgment interest, which the trial court granted on August 22, 2000. Specifically, the trial court found that pursuant to *Poehlman II*, Grubnich was liable for post-judgment interest on the $100,000.

■ As noted earlier, the Renners' motion was in substance a motion for proceedings supplemental. "Proceedings supplemental are a continuation of the original cause of action and are not a new and independent civil action. '[P]roceedings supplemental are merely a continuation of the *underlying claim* on the merits.' " *National Mut. Ins. Co. v. Sparks*, 647 N.E.2d 375, 376–77 (Ind.Ct.App.1995) (citations omitted), *trans. denied.* Thus, the

---

4. We note that Grubnich failed to indicate that transfer had been granted in *Poehlman I* when he relied on its holding in his motion to release bond. We remind counsel of their duty of candor toward the tribunal. *See* Ind. Professional Conduct Rule 3.3.

trial court had continuing jurisdiction over the Renners' claim. When the Renners sought enforcement of the judgment in March 2000, *Poehlman II* had been decided. Grubnich argues that in determining the Renners' right to post-judgment interest, we must look back to the law in existence at the time the judgment was satisfied in March 1999. Because *Poehlman II* had not been decided at that time, Grubnich argues that it is inapplicable to the Renners' claim.

First, we note that contrary to Grubnich's apparent belief, *Poehlman I* was not the controlling law in March 1999, as it had been vacated by the supreme court's grant of transfer. Accordingly, at that time, case law neither explicitly provided for nor precluded recovery of post-judgment interest from defendant doctors in a medical malpractice action. Indiana statutory law, however, provided for the recovery of post-judgment interest on money judgments. Thus, in medical malpractice actions, successful plaintiffs were entitled to post-judgment interest. Grubnich would have us believe that defendant doctors who had a money judgment entered against them were treated differently than all other judgment debtors. We disagree. The Medical Malpractice Act is silent as to any limitation on the applicability of the post-judgment interest statute. Therefore, based on the law as it existed in March 1999, the Renners were entitled to post-judgment interest. *See P.B. v. T.D.*, 561 N.E.2d 749, 750 (Ind.1990) (" 'Where a statute is susceptible to more than one interpretation, however, the court may consider the consequences of a particular construction.' " (citation omitted)); *Pea v. Pea*, 498 N.E.2d 110, 114 (Ind.Ct.App. 1986) ("Statutes are to be construed in harmony with existing law and as part of a general and uniform system of jurisprudence."), *trans. denied.*

■ Second, we note that "an action is 'pending' until the judgment is fully satisfied." *Myers v. Hoover*, 157 Ind.App. 310, 316, 300 N.E.2d 110, 114 (1973). Accordingly, the Renners' claim was pending as the judgment had not yet been fully satisfied in March 2000. Thus, the law in effect as of March 2000 was applicable to the Renners' claim. *See Texas Eastern Transmission Corp. v. Seymour Nat'l Bank*, 451 N.E.2d 698, 699 (Ind.Ct.App. 1983) ("The last judicial decision is considered to have stated the law as it always existed; therefore, a civil case is determined on the law as it has been stated at the time judgment is rendered." (internal citations omitted)); *cf. Albro v. Indianapolis Educ. Ass'n*, 585 N.E.2d 666, 671 (Ind. Ct.App.1992) (holding that a new rule applied in the case announcing the rule is to be applied retroactively to all pending cases).

■ Further, contrary to Grubnich's argument, the supreme court's decision in *Poehlman II* was not a change in the law. Rather, it was a clarification of existing law. *See Poehlman II*, 717 N.E.2d at 583 ("[I]t has been the intention of the law in this State for nearly 25 years that there should be an incentive on the part of judgment debtors to satisfy expeditiously their debt obligations to avoid this accrual of interest."). Clarifications of the law apply retroactively, and therefore, Grubnich's argument must fail. *See Indiana Civil Rights Comm'n v. Southern Indiana Gas & Elec. Co.*, 648 N.E.2d 674, 693 n. 7 (Ind.Ct.App.1995) (noting that court's decision "merely clarified prior decisions, it did not overturn past precedent or decide a new issue, and thus there [was] no reason to apply such a decision only prospectively"), *trans. denied.* Hence, in determining the Renners' right to post-judgment interest as of March 1999, when Grubnich paid the money judgment, we apply the holding

in *Poehlman II*, which indicates that Grubnich is liable for post-judgment interest on his portion of the money judgment. The Renners were entitled to post-judgment interest from Grubnich on the $100,000 from February 12, 1997 to March 8, 1999, at the statutory rate of eight percent per year.[5] *See* IND.CODE § 24-4.6-1-101. Therefore, we find no error in the trial court's order requiring Grubnich to pay post-judgment interest.

### III. Amount of Interest

■ Grubnich contends that the Renners are not entitled to interest on the post-judgment interest. In particular, Grubnich argues that interest ceases to accrue at the time of satisfaction of the judgment. *See* IND.CODE § 24-4.6-1-101.

■ The purpose of post-judgment interest is to compensate fully the injured party by providing interest for the deprivation of the use of money. *Marshall v. Bird*, 577 N.E.2d 254, 257 (Ind.Ct.App. 1991), *trans. denied; DeLaCruz v. Pruitt*, 590 F.Supp. 1296, 1309 (N.D.Ind.1984) ("The underlying purpose of awarding interest on compensatory damages is to make the wronged party whole by compensating the wronged person for being deprived of the monetary loss, *i.e.*, the money and the use of the money."). Here, the Renners received a money judgment on February 12, 1997. Grubnich did not satisfy his portion of the judgment until March 8, 1999. Thus, interest accrued from the date of the judgment until satisfaction, *see* IND.CODE 24-2.6-1-101, and the Renners were entitled to interest at the statutory rate for that period.

The Renners claim that they are entitled to interest on the post-judgment interest

owed because the order requiring Grubnich to pay interest is a money judgment. In support of their claim, the Renners cite *Indiana Revenue Bd.*, 270 Ind. 365, 385 N.E.2d 1131. In *Indiana Revenue*, the State Revenue Board (the Board) was mandated to pay money owed to ninety-one counties, which was in effect a money judgment. The Board paid the amount of the judgment approximately six months later, but failed to pay post-judgment interest on the judgment at the same time. The Board continued to delay and refused to pay the interest, thereby forcing the counties to sue separately for the interest. That suit resulted in a final judgment on September 30, 1976, for the amount of interest that had accrued under the statute. Because it was a money judgment, interest began accruing on the second judgment. The supreme court affirmed the trial courts award of interest on the judgment, which was for the previous post-judgment interest.

Here, Grubnich should have paid the interest at the time he paid the $100,000 as satisfaction for the money judgment against him. However, he failed to do so. Rather, he forced the Renners to seek enforcement of the judgment from the trial court. On August 22, 2000, the trial court ordered Grubnich to pay post-judgment interest on the $100,000. Grubnich has not yet paid that amount. Thus, the Renners are entitled to post-judgment interest on the judgment for interest, which began accruing on August 22, 2000, and runs until the date Grubnich pays the judgment for interest.

### IV. Renners' Claim for Sanctions

■ In their cross-appeal, the Renners claim that the trial court erred in

---

**5.** We note that the method for calculating post-judgment interest is one of simple interest. *See Nesses v. Kile*, 656 N.E.2d 546, 547 (Ind.Ct.App.1995) (noting that Indiana Code Section 24-4.6-1-101 applies to interest on judgments only and not to interest upon interest on judgments; thus, parties not entitled to compound interest).

denying them sanctions, including attorney fees. Specifically, they argue that Grubnich's defense against their claim for post-judgment interest was frivolous, unreasonable, and groundless based on our supreme court's opinion in *Poehlman II*. They also argue that Grubnich litigated the action in bad faith. In challenging the trial court's judgment, the Renners are appealing from a negative judgment. "We will not reverse the judgment of the trial court unless it is contrary to law." *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1028 (Ind.Ct.App.1998). "This court will set aside a negative judgment as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one." *Id.*

██ The trial court may award attorney fees to the prevailing party provided the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

IND.CODE § 34–52–1–1(b). An award or denial of attorney fees under Indiana Code Section 34–52–1–1 is afforded a multi-step review. "First, we review the trial court's findings of fact under the clearly erroneous standard, and second we review *de novo* the trial court's legal conclusions. Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard." *Emergency Physicians of Indianapolis v. Pettit*, 714 N.E.2d 1111, 1115 (Ind.Ct.App.1999), *adopted in relevant part*, 718 N.E.2d 753 (Ind.1999). In the case at bar, the trial court did not make findings of fact or identify its legal conclusions. Rather, the trial court entered a general denial of the Renners' request for fees.

██ Grubnich's defense was based on his argument that *Poehlman II* was inapplicable to the case because it was decided after final judgment was entered on the Renners' claim. "A defense is 'frivolous' (a) if it is made primarily to harass or maliciously injure another, (b) if counsel is unable to make a good faith and rational argument on the merits of the action, or (c) if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law." *Emergency Physicians of Indianapolis*, 714 N.E.2d at 1115. "A defense is 'unreasonable' if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the defense justified or worthy of litigation." *Id.* "A defense is 'groundless' if no facts exist which support the defense relied upon and supported by the losing party." *Id.*

We agree with the Renners that it would be unreasonable for Grubnich to claim after *Poehlman II* that the Medical Malpractice Act limits his liability for post-judgment interest on the money judgment. However, Grubnich's argument is based on the retroactive application of case law to a previously decided claim in which the appellate process has been completed, rather than the substantive holding of *Poehlman II*. Indeed, although the resolution of the issues before us seems clear after research and careful analysis, we acknowledge that reasonable minds could disagree as to the application of *Poehlman II* to this case. Given the complexity of the analysis involved in determining these issues, we cannot impute frivolous conduct to Grubnich. Although Grubnich may have misinterpreted the law in this case, his argument was

not unreasonable or groundless. Therefore, we find no error in the trial court's denial of the Renners' request for attorney fees.

Affirmed.

BAKER and BARNES, JJ., concur.