# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**NEAL F. EGGESON, JR.**
Eggeson Appellate Services
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**A. RICHARD M. BLAIKLOCK**
**CHARLES R. WHYBREW**
Lewis Wagner, LLP
Indianapolis, Indiana

**FILED**

May 03 2012, 8:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

|                                        |   |                      |
|----------------------------------------|---|----------------------|
| M.O.,                                  | ) |                      |
|                                        | ) |                      |
|   Appellant-Plaintiff,       | ) |                      |
|                                        | ) |                      |
|     vs.            | ) | No. 53A05-1112-PL-682 |
|                                        | ) |                      |
| INDIANA DEPARTMENT OF INSURANCE,       | ) |                      |
| INDIANA PATIENT'S COMPENSATION FUND,   | ) |                      |
|                                        | ) |                      |
|   Appellee-Defendant.        | ) |                      |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Erik C. Allen, Special Judge
Cause No. 53C01-0604-PL-723

**May 3, 2012**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

This case presents issues of which of two statutes sets the interest rate on payments by the Indiana Department of Insurance Patient's Compensation Fund ("the Fund") to successful malpractice claimants and of when interest begins to accrue on payments due.[1] The trial court concluded that Indiana Code section 24-4.6-1-101 (1993), with its eight percent rate, applied and that interest began to accrue on the fifteenth day of the month following the end of the claim period in which the claim was filed with the Fund. We agree and affirm.

## ISSUE

M.O. raises two issues, which we consolidate and restate as: whether the trial court erred in determining the date upon which postjudgment interest began to accrue and the applicable rate of interest.

## FACTS AND PROCEDURAL HISTORY

M.O. sued IMA, Inc. ("IMA"), a qualified health care provider as defined by Indiana's Medical Malpractice Act ("the Act"), claiming medical malpractice. On July 1, 2010, a jury returned a verdict in favor of M.O. in the amount of $1.25 million. On September 27, 2010, the trial court entered a final judgment in favor of M.O. in the same amount. IMA paid M.O. $250,000, the maximum amount for which it was liable under the Act, and filed a partial satisfaction of judgment on October 5, 2010.

---

[1] A third statute, Indiana Code section 34-54-8-5 (1998), is discussed in M.O.'s Appellant's Brief, but M.O. recognizes that it does not apply here. Appellant's Br. pp. 6-7.

M.O. sent a certified copy of the final judgment to the Fund. The Fund received the judgment on October 12, 2010, and initially rejected M.O.'s request to pay the unpaid portion of the judgment. Consequently, M.O. returned to the trial court and requested that the Fund be added as a party. The trial court granted M.O.'s request on November 17, 2010.[2] On May 9, 2011, M.O. filed a motion asking the trial court to order the Fund to pay M.O. one million dollars plus postjudgment interest. On June 21, 2011, the trial court ordered the Fund to pay M.O. one million dollars and determined that the question of postjudgment interest would be decided by separate motion. Next, the Fund filed a Notice of Appeal. However, the Fund subsequently ended its opposition to M.O.'s claim for the unpaid portion of the judgment and dismissed its appeal, which had proceeded under Cause Number 53A05-1107-PL-352. On September 8, 2011, the Fund paid M.O. one million dollars.

Meanwhile, M.O. had filed a motion for postjudgment interest. After further proceedings, the trial court granted M.O.'s motion and held: "[M.O.] is entitled to post-judgment interest to be paid by [the Fund] and the post-judgment interest shall accrue pursuant to statute at the annual rate of 8% and shall begin accruing as of January 15, 2011." Appellant's App. p. 26. This appeal followed.

DISCUSSION AND DECISION

The parties agree that there are no factual disputes and that the appeal presents a pure issue of law. We review questions of law under a de novo standard and owe no

---

[2] On December 22, 2010, the Fund initiated a separate declaratory judgment action in Marion County, asking the court to determine that the Fund was not liable to M.O. for the unpaid portion of the judgment. The case was transferred to Monroe County, and the outcome of the case is not provided in the record.

deference to a trial court's legal conclusions. *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.*, 889 N.E.2d 305, 309 (Ind. 2008).

We first address whether the trial court established the correct postjudgment interest rate. The parties agree that the applicable interest rate is set by statute, but they disagree as to which statute applies. M.O. contends that Indiana Code section 34-13-3-18 (1998) provides the appropriate rate. That statute provides:

> (a) A claim or suit settled by, or a judgment rendered against, a governmental entity shall be paid by the governmental entity not later than one hundred eighty (180) days after the date of settlement or judgment, unless there is an appeal, in which case not later than one hundred eighty (180) days after a final decision is rendered.
>
> (b) If payment is not made within one hundred eighty (180) days after the date of settlement or judgment, the governmental entity is liable for interest from the date of settlement or judgment at an annual rate of six percent (6%). The governmental entity is liable for interest at that rate and from that date even if the case is appealed, provided the original judgment is upheld.

*Id.* The Fund argues that Indiana Code section 24-4.6-1-101 sets forth the proper rate. That provision states:

> Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:
>
> (1) the rate agreed upon in the original contract sued upon, which shall not exceed an annual rate of eight percent (8%) even though a higher rate of interest may properly have been charged according to the contract prior to judgment; or
>
> (2) an annual rate of eight percent (8%) if there was no contract by the parties.

*Id.*

4

Our Supreme Court's opinion in *Poehlman v. Feferman*, 717 N.E.2d 578 (Ind. 1999), provides guidance as to which statute applies. In that case, Poehlman obtained a judgment against a doctor for medical malpractice. The doctor paid Poehlman the maximum amount that he owed under the Act. Next, the Fund paid Poehlman the unpaid balance of her judgment, excluding postjudgment interest. As a result, Poehlman filed a separate complaint for declaratory judgment against the doctor, the doctor's insurer, and the Fund, seeking postjudgment interest. The trial court concluded that Poehlman was not entitled to postjudgment interest from any of the three defendants. On appeal, a panel of this Court concluded that the Fund was obligated to pay all amounts in excess of the health care provider's statutory limit, including postjudgment interest.

On transfer, our Supreme Court noted that the parties disagreed "over whether [the Act's] liability limits apply to damages only or also to the interest and costs and over how to allocate those expenses between the doctor and patient's compensation fund." *Id.* at 579. The Court concluded that the Act's recovery limitations are intended to limit only the amount of damages, "not collateral litigation expenses," including postjudgment interest. *Id.* at 581. Thus, Poehlman was entitled to collect postjudgment interest.

Next, the Court recognized that health care providers and the Fund are both potentially responsible for paying medical malpractice judgments, but they may have separate litigation strategies that may delay payment and independently generate collateral litigation expenses. For this reason, our Supreme Court rejected the Court of Appeals' determination that the Fund must pay all amounts in excess of the health care provider's statutory limit. The Court determined that if the health care provider is not

5

held responsible for its share of collateral litigation expenses, the provider would have an incentive "to run up collateral litigation expenses to be subsidized with the monies of the [Fund.]" *Id.* at 583. Consequently, our Supreme Court concluded that the health care provider and the Fund are individually responsible for their collateral litigation expenses. Furthermore, the Court held that Indiana Code section 24-4.6-1-101 "fully applies to medical malpractice judgments." *Id.* at 584. Thus, Indiana Code section 24-4.6-1-101 sets the applicable rate for calculating postjudgment interest in medical malpractice cases.

In this case, we are bound by our Supreme Court's holding in *Poehlman*, and we conclude that Indiana Code section 24-4.6-1-101 sets the rate for postjudgment interest. M.O. argues that Indiana Code section 34-13-3-18 applies to postjudgment interest claims against the Fund, regardless of the holding in *Poehlman*, because that statute supersedes *Poehlman*. We disagree. Our Supreme Court handed down its opinion in *Poehlman* on October 7, 1999. Indiana Code section 34-13-3-18 took effect on July 1, 1998. 1998 Ind. Acts p. 51. Thus, *Poehlman* was issued well after Indiana Code section 34-13-3-18 took effect.

M.O. also argues that Indiana Code section 34-13-3-18 must apply instead of Indiana Code section 24-4.6-1-101 because Indiana Code section 34-13-3-18 is more specific in application. It is true that specific statutory language should control over more general language when there is a conflict between the two. *Nat'l Cable & Telecomms. Ass'n, Inc. v. Gulf Power Co.*, 534 U.S. 327, 335, 122 S. Ct. 782, 151 L. Ed. 2d. 794 (2002). However, the specific statute controls only within its self-described scope. *Id.* at 336.

6

Here, we cannot conclude that Indiana Code section 34-13-3-18 conflicts with, much less controls over, Indiana Code section 24-4.6-1-101. Indiana Code section 34-13-3-1 (1998) provides, "This chapter [which includes Indiana Code section 34-13-3-18] applies only to a claim or suit in tort." A claim against the Fund for unpaid damages is not a tort claim. The Fund is a creation of the Act, which was designed to curtail liability for medical malpractice. *Chamberlain v. Walpole*, 822 N.E.2d 959, 963 (Ind. 2005). The Act does not create substantive rights or new causes of action. *Atterholt v. Robinson*, 872 N.E.2d 633, 639-40 (Ind. Ct. App. 2007). Instead, the Act designated the Fund as a source for "[r]ecovery of excess damages" after a health care provider or its insurer has paid a portion of the damages owed for medical malpractice. *Atterholt v. Herbst*, 902 N.E.2d 220, 222 (Ind. 2009), *clarified on reh'g*, 907 N.E.2d 528 (2009). Allowing claims against the Fund for excess damages is not based on tort principles of compensating patients for any purported wrongdoing by the Fund, but rather serves a purpose of "limit[ing] providers' financial exposure, thereby allowing them to acquire affordable malpractice insurance." *Ind. Patient's Comp. Fund v. Butcher*, 863 N.E.2d 11, 20 (Ind. Ct. App. 2007). Thus, M.O.'s claim against the Fund for excess damages is not a tort claim and does not fall within the scope of Indiana Code section 34-13-3-18.

To summarize, Indiana Code section 24-4.6-1-101 applies to this case, and pursuant to that statute, the relevant rate for calculating postjudgment interest is eight percent. Consequently, the trial court did not err by determining that eight percent is the applicable interest rate.

Next, we determine whether the trial court erred by designating January 15, 2011, as the date upon which postjudgment interest began to accrue. M.O. contends that the date of the jury verdict against IMA is the appropriate start date. The Fund contends that the trial court properly selected the beginning date.

Indiana Code section 24-4.6-1-101 provides, in relevant part, "*Except as otherwise provided by statute*, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction . . . ." (emphasis added). Resolution of this issue requires us to consider the portions of the Act that govern claims against the Fund for unpaid damages.

The Act provides, in relevant part:

If a health care provider or its insurer has agreed to settle its liability on a claim by payment of its policy limits of two hundred fifty thousand dollars ($250,000), and the claimant is demanding an amount in excess of that amount, the following procedure must be followed:

(1) A petition shall be filed by the claimant in the court named in the proposed complaint, or in the circuit or superior court of Marion County, at the claimant's election, seeking:

    (A)   approval of an agreed settlement, if any; or
    (B)   demanding payment of damages from the patient's compensation fund.

Ind. Code § 34-18-15-3 (1999). A copy of the petition with summons shall be served on the commissioner, the health care provider, and the health care provider's insurer. *Id.*

Similarly, another section of the Act provides, in relevant part:

[A]ll amounts that may subsequently become due and payable to a claimant arising out of an act of malpractice of the health care provider occurring during the year in which the annual aggregate was exhausted shall be paid

8

from the patient's compensation fund under the following terms and conditions:

> (1) A health care provider whose annual aggregate has been exhausted has no right to object to or refuse permission to settle such a claim.
>
> (2) If a health care provider or the commissioner and claimant agree on a settlement, the following procedure must be followed:
>
>> (A) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider or, if none is pending, in the circuit or superior court of Marion County, seeking approval of the agreed settlement.
>>
>> (B) A copy of the petition shall be served on the commissioner and the health care provider at least ten (10) days before filing and must contain sufficient information to inform the other parties about the nature of the claim and the amount of the proposed settlement.

Ind. Code § 34-18-6-6 (1998). Under either statute, the Fund has the authority to object to the amount of damages requested by the patient and to request an evidentiary hearing to determine the appropriate amount. Ind. Code §§ 34-18-15-3(3), 34-18-6-6(a)(2)(C).

The Act also establishes a procedure for the Fund to pay patients who present claims for unpaid damages:

> Claims for payment from the patient's compensation fund that become final during the first six (6) months of the calendar year must be computed on June 30 and must be paid not later than the following July 15. Claims for payment from the fund that become final during the last six (6) months of the calendar year must be computed on December 31 and must be paid not later than the following January 15.

Ind. Code § 34-18-6-4 (1998). Another provision of the Act explains:

> The auditor of state shall issue a warrant in the amount of each claim submitted to the auditor against the fund on June 30 and December 31 of

9

each year. The only claim against the fund shall be a voucher or other appropriate request by the commissioner after the commissioner receives:

> (1) a certified copy of a final judgment against a health care provider; or

> (2) a certified copy of a court approved settlement against a health care provider.

Ind. Code § 34-18-6-5 (1998).

Thus, after a final judgment is issued against a health care provider in a medical malpractice action and the provider pays the maximum amount allowed under the Act, a patient that seeks payment for the remaining portion of the judgment must submit a certified copy of the final judgment to the Fund. The Fund may accept the amount of damages requested by the patient or dispute the amount and request an evidentiary hearing. In either event, once the Fund agrees (or is ordered by a court) to pay a patient's claim for damages, the commissioner of the Department submits a voucher to the auditor of state, who issues payments from the Fund biannually.

In *Poehlman*, our Supreme Court discussed the applicability of these statutes to claims for postjudgment interest. In that case, the Court noted that a successful plaintiff under the Act who seeks payment of additional damages from the Fund must first submit a certified copy of the judgment to the Commissioner. Furthermore, the Court determined that the biannual payment procedure set forth in Indiana Code section 34-18-6-4 (formerly Indiana Code section 27-12-6-4), which prevents immediate payout of funds to claimants, is consistent with the requirement that the Fund's money be "held in trust . . . [and] invested, and reinvested." 717 N.E.2d at 584 n.6 (quoting Ind. Code § 27-

12-6-1(b) (current version at Ind. Code § 34-18-6-1(b) (1998)). Thus, our Supreme Court concluded that postjudgment interest accrues upon the Fund's liability for damages "beginning on the first biannual payment date applicable to the claim." *Id.* The Court characterized the period of time between the issuance of the final jury verdict and the biannual payment date upon which postjudgment interest begins to accrue as a "grace period." *Id.*

Based upon our review of the statutes and the holding in *Poehlman*,[3] we conclude that postjudgment interest began to accrue against the Fund on the first biannual payment date applicable to the claim. M.O. submitted a certified copy of the jury verdict against IMA to the Fund on October 12, 2010. The next payment date under Indiana Code section 34-18-6-4 was January 15, 2011. Therefore, the trial court did not err in setting the starting date for calculating postjudgment interest.

M.O. argues that our Supreme Court's holding in *Poehlman* is the result of "poor statutory construction." Appellant's Reply Br. p. 4. We find the Court's reasoning in *Poehlman* to be clear and applicable here. In any event, we may not disregard our Supreme Court's precedent.

---

[3] M.O. argues that the Court's conclusion in *Poehlman* regarding the starting date for calculating postjudgment interest owed by the Fund is not binding upon this case because that conclusion is dicta. Statements that are not necessary in the determination of the issues presented in an appeal are dicta and are not binding. *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1083 (Ind. Ct. App. 2008), *trans. denied*. In *Poehlman*, our Supreme Court was asked to determine how to allocate interest and court costs between a health care provider and the Fund. The Court stated that the provider and the Fund were individually responsible for their shares of interest and court costs. In determining the portion of postjudgment interest attributable to the Fund, it was necessary for our Supreme Court to decide when the Fund's postjudgment interest liability began to accrue. Thus, *Poehlman*'s holding that postjudgment interest begins to accrue against the Fund "beginning on the first biannual payment date applicable to the claim" is not dicta, and we are bound to follow our Supreme Court's precedent.

11

M.O. also contends that the Fund has waived the "grace period" discussed in *Poehlman* because the Fund failed to promptly pay M.O.'s claim for damages and instead filed a separate action for a declaratory judgment, seeking a ruling that the Fund was not required to pay any excess damages to M.O. We disagree. Waiver is the voluntary and intentional relinquishment of a known right. *In re Unsupervised Estate of Deiwert*, 879 N.E.2d 1126, 1129 (Ind. Ct. App. 2008). Silence, inactivity or acquiescence is not waiver unless the party against whom waiver is claimed had a duty to act or speak. *Hastetter v. Fetter Props., LLC*, 873 N.E.2d 679, 684 (Ind. Ct. App. 2007).

Here, the Fund had the statutory right to challenge a claimant's calculation of unpaid damages and to request a hearing. *See* Ind. Code §§ 34-18-6-6, 34-18-15-3. The Fund exercised that right and disputed M.O.'s valuation of damages both in this case and in a separate declaratory judgment action. We do not construe the Fund's exercise of its statutory right as a waiver of the starting date for calculating postjudgment interest or as a concession that the starting date should be the date of the jury verdict.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

DARDEN, J., and VAIDIK, J., concur.

12