EMERGENCY PHYSICIANS OF INDIA-
NAPOLIS, W. Larry Corbett, M.D.,
Methodist Health Care Center d/b/a
Methodist Occupational Health Centers,
Inc., John W. Timothy, Jr., M.D., and
Michael A. Kennedy, M.D., Appellants–
Defendants,

v.

James PETTIT, Appellee–Plaintiff.

No. 49A02–9805–CV–416.

Court of Appeals of Indiana.

June 29, 1999.

David C. Jensen, Eichhorn & Eichhorn, Hammond, Indiana, Attorney for Appellant.

Mary A. Findling, Jerry Garau, Findling, Garau Germano & Pennington, P.C., Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RUCKER, Judge

In this medical negligence action a jury returned a verdict in favor of Appellee James Pettit for the maximum amount recoverable under the Indiana Medical Malpractice Act. On motion by Pettit the trial court entered an award of prejudgment interest in addition to costs including attorney's fees. Appellant Methodist Health Care Center d/b/a Methodist Occupational Health Centers, Inc., John W. Timothy, Jr., M.D., and Michael A. Kennedy, M.D. (referred to collectively as "Providers") now appeal raising two issues for our review. We restate the issues as follows: (1) in a medical negligence action may the trial court award prejudgment interest or costs including attorney's fees to a party who has received a judgment for the maximum amount recoverable under the Medical Malpractice Act, and (2) did Providers engage in conduct during trial entitling Pettit to an award of costs including attorney's fees.

On May 9, 1996, Pettit sued Providers along with Emergency Physicians of Indianapolis, and W. Larry Corbett, M.D. ("Emergency Physicians"). Pettit alleged that Providers and Emergency Physicians were negligent in failing to refer him to a vascular specialist when he exhibited signs and symptoms of an arterial clot in his right leg. Pettit also alleged that Providers' and Emergency Physicians' negligent failure to refer him to a vascular specialist caused him to lose his right leg to amputation. Ultimately the case proceeded to trial by jury. The jury returned a verdict in favor of Pettit and against Providers in the amount of $750,000.00. Pettit received an adverse jury verdict on his claim against Emergency Physicians, however he does not challenge the verdict in this appeal. In a post-trial motion Pettit sought prejudgment interest pursuant to Ind.Code § 34-4-37-1 *et seq.*[1] Alleging

that Dr. Timothy pursued defenses at trial that were frivolous, unreasonable, or groundless, Pettit also filed a motion seeking attorney's fees and costs against Dr. Timothy pursuant to Ind.Code § 34-1-32-1.[2] The trial court granted both motions awarding Pettit $134,383.92 in prejudgment interest and $13,305.00 in costs including attorney's fees. Providers now appeal. Additional facts are set forth below where relevant.

## I.

The Medical Malpractice Act provides in relevant part:

(a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total *amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).*

(b) A health care provider qualified under this article is *not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.*

Ind.Code § 27-12-14-3 (emphasis added). According to Providers the trial court erred in awarding prejudgment interest because the Act creates a limit that may be paid to a victim of medical malpractice. Here, the jury awarded Pettit $750,000.00. Providers maintain this amount was the statutory limit that Pettit could recover, and the trial court's award of an additional amount in the form of prejudgment interest was contrary to the statute. Pettit counters (a) the recovery limitation applies only to an "amount recovered for an injury or death" and "for an occurrence of malpractice"; and (b) the prejudgment interest statute applies "to *any* civil action arising out of tortious conduct." I.C. §§ 27-12-14-3 and 34-51-4-1 (emphasis added). According to Pettit an award of prejudgment interest is neither an award for an occurrence of malpractice nor an amount recovered for an injury or death; and further

---

1. Repealed by P.L.1-1998 effective July 1, 1998, for current provision now see Ind.Code § 34-51-4-1 *et seq.*

2. Repealed by P.L.1-1998 effective July 1, 1998, for current provision now see Ind.Code § 34-52-1-1.

acts of medical negligence are not excluded from the prejudgment interest statute.

We have no quarrel with the general proposition that prejudgment interest may be awarded on a judgment entered on a claim of medical malpractice. The only limitation the prejudgment interest statute places on medical malpractice actions is that prejudgment interest does not apply to claims against the patient's compensation fund. Ind.Code § 34–51–4–2. Otherwise, a party who complies with the procedures outlined under the statute may be entitled to prejudgment interest as a part of the judgment. Ind.Code § 34–51–4–7. However, the general proposition notwithstanding the question remains whether prejudgment interest may be awarded where a party receives a judgment in the maximum amount recoverable under the Medical Malpractice Act.

Prejudgment interest represents an element of complete compensation. *Layden v. New Era Corp.*, 575 N.E.2d 638, 641(Ind.Ct.App.1990); *Bd. Of Public Works v. L. Cosby Bernard*, 528 N.E.2d 93, 95 (Ind. Ct.App.1988). As such, prejudgment interest is not simply an award of interest on a judgment, but rather is recoverable as "additional damages to accomplish full compensation." *Harlan Sprague Dawley v. S.E. Lab Group*, 644 N.E.2d 615, 619 (Ind.Ct.App. 1994), *trans. denied.* In the context of a medical malpractice action, the "additional damages" aspect of prejudgment interest compels the conclusion that such interest is necessarily a part of the award for an occurrence of medical negligence or an amount recovered for an injury or death. Stated differently the interest is a part of the judgment to which it is attached. Thus, a party cannot recover prejudgment interest if it will result in the party recovering more than the statutory limit. In the case before us Pettit was awarded the maximum amount allowable under the Medical Malpractice Act. Because the award of prejudgment interest results in Pettit recovering more than the Act allows, the award cannot stand.

## II.

Providers next contend the trial court erred in awarding Pettit costs including attorney's fees. On this issue Providers advance two arguments: (1) the Medical Malpractice Act sets an absolute cap on the amount a party may recover; thus any award exceeding the cap is contrary to the statute, and (2) notwithstanding the cap, they engaged in no conduct justifying an award of attorney's fees.

As part of the cost of litigation the court may award attorney's fees to the prevailing party provided the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

Ind.Code § 34–52–1–1. As for Providers' first argument, we do not agree that the Act sets an absolute cap on all liability whatsoever. As indicated earlier the limitation applies only to an occurrence of medical negligence or an amount recovered for an injury or death. An award of costs and attorney's fees represents neither. In addition, one of the familiar tenets of statutory construction is that we must construe statutes to avoid an absurd result or a result that the legislature, as a reasonable body, could not have intended. *Raider v. Pea*, 613 N.E.2d 870, 872 (Ind.Ct.App.1993). If we were to apply the Medical Malpractice Act as argued by Providers, then a party who engages in conduct that would otherwise warrant an award of attorney's fees could escape accountability for his conduct by alleging that the award would exceed the statutory limit. We do not believe the legislature intended such a result. The issue here is whether Providers engaged in conduct justifying an award of attorney's fees.

In support of his claim for fees Pettit argued before the trial court that Dr. Timothy advanced two defenses at trial that were frivolous, unreasonable, or groundless. More

specifically, according to Pettit, Dr. Timothy contended (1) that his conduct did not fall below the applicable standard of care and (2) that Pettit was contributorily negligent. According to Pettit "the only way that Dr. Timothy could establish that his care was within the standard of care was by presenting expert testimony on that issue." R. at 620. Because he failed to introduce such evidence, Pettit contends that this defense was frivolous, unreasonable, or groundless. As for the defense of contributory negligence, Pettit argued that "Dr. Timothy presented absolutely no evidence that Mr. Pettit was in any way contributorily negligent. Even Dr. Timothy's attorney recognized this fact by withdrawing the defense at the conclusion of evidence." R. at 621.[3]

■ An award of attorney's fees under I.C. 34–52–1–1 is afforded a multi-step review. First, we review the trial court's findings of fact under the clearly erroneous standard, and second we review *de novo* the trial court's legal conclusions. *St. Mary Medical Center v. Baker*, 611 N.E.2d 135, 137 (Ind.Ct. App.1993), *trans. denied.* Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *Id.* Here, the trial court did not enter findings. In fact the trial court did not expressly indicate the legal conclusion on which its award of attorney's fees was based. Rather, the trial court entered an order granting Pettit's request for fees. Because Pettit's request was based on three grounds, we view the trial court's order as an implicit conclusion that Timothy's defenses were frivolous, unreasonable, and groundless. Thus we review this conclusion *de novo. Id.* A defense is "frivolous" (a) if it is made primarily to harass or maliciously injure another, (b) if counsel is unable to make a good faith and rational argument on the merits of the action, or (c) if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1029 (Ind. Ct.App.1998). A defense is "unreasonable"

if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the defense justified or worthy of litigation. *Id.* A defense is "groundless" if no facts exist which support the defense relied upon and supported by the losing party. *Id.*

■ Pettit contends that Dr. Timothy's standard of care defense was frivolous, unreasonable and groundless because Dr. Timothy failed to present expert testimony on the question of the applicable standard of care. Medical malpractice cases are no different than other kinds of negligence actions regarding that which must be proven. *Malooley v. McIntyre*, 597 N.E.2d 314, 316 (Ind. Ct.App.1992). The complainant must establish (1) that the health care provider owed a duty, (2) which was breached by virtue of conduct which fell below the applicable standard of care, and (3) which proximately caused a compensable injury. *Id.* We disagree with Pettit's contention that the only way Dr. Timothy could establish that his care fell within the applicable standard of care was by presenting expert testimony on that issue. The case authority discussing the need for expert testimony on the question of standard of care arises in the context of the grant or denial of a motion for summary judgment. *See, e.g., Bassett v. Glock*, 174 Ind.App. 439, 368 N.E.2d 18 (1977); *Stackhouse v. Scanlon*, 576 N.E.2d 635 (Ind.Ct. App.1991), *trans. denied; Simmons v. Egwu*, 662 N.E.2d 657 (Ind.Ct.App.1996), *trans. denied; Slease v. Hughbanks*, 684 N.E.2d 496 (Ind.Ct.App.1997). Here the case proceeded to trial by jury. More importantly the existence of the appropriate standard of care is not a defense. Rather, it is an element of proof, the burden of which rests with the plaintiff. Stated differently, Dr. Timothy was not required to introduce any evidence proving that his conduct fell within the applicable standard of care. Instead, it was Pettit's obligation to convince the jury that Dr. Timothy's conduct in fact did not meet the applicable standard of care. Apparently Pet-

---

3. We note in passing that counsel for Dr. Timothy did not withdraw the defense of contributory negligence. Rather, the record shows that at the close of trial Pettit moved for directed verdict on the question of contributory negligence and counsel for Dr. Timothy did not object to the motion. R. at 1488.

tit carried his burden in that the jury returned a verdict in his favor.

 We also note that Pettit's allegation that Dr. Timothy "asserted" a so-called "standard of care" defense is somewhat misleading. In support of this allegation Pettit directs our attention to portions of the record containing the trial court's preliminary instructions. The instructions included Dr. Timothy's contention that he was not negligent in his treatment of Pettit. R. at 252, 797. First, the denial of negligence is not the same as asserting a defense. Second, even if it were the same Pettit still could not prevail. To support his negligence claim Pettit had the burden of proving duty, breach, and causation. *See Malooley, supra.* The failure to prove any one of the three elements would have been fatal to his claim. The record shows that Dr. Timothy believed his treatment or lack thereof, was not the cause of Pettit's injury. Thus by declaring that he was "not negligent", Dr. Timothy was merely taking the position that Pettit could not show at least one element of his claim, namely, causation. Obviously the jury thought otherwise. However, an award of attorney's fees is not justified merely because a party loses on the merits. *Chrysler Motor Corp. v. Resheter,* 637 N.E.2d 837, 840 (Ind.Ct.App.1994), *trans. denied.* We conclude that Pettit is not entitled to an award of attorney's fees on the grounds that Dr. Timothy failed to introduce expert testimony on the question of standard of care.

 Pettit also sought an award of attorney's fees on the basis that Dr. Timothy's defense of contributory negligence was frivolous, unreasonable, and groundless. According to Pettit Dr. Timothy introduced no evidence to support the defense. We disagree. The record shows that after conducting a physical examination, Dr. Timothy advised Pettit that he needed a vascular examination in order to rule out a blood clot. Dr. Timothy instructed Pettit to contact his family physician to arrange the evaluation. Pettit did not do so deciding instead to go the emergency room of a local hospital. There, he was examined by one of the co-defendants in this case, Dr. W. Larry Corbett, who also suggested that Pettit see another physician for further evaluation. Again Pettit did not do so. A patient may be contributorily negligent by failing to follow a physicians instructions. *Harris v. Cacdac,* 512 N.E.2d 1138, 1139 (Ind.Ct.App.1987), *trans. denied.* In this case the jury was not persuaded by Dr. Timothy's contributory negligence defense. Again, however, an award of attorney's fees is not justified merely because a party loses on the merits. *Chrysler Motor Corp.,* 637 N.E.2d at 840. Upon *de novo* review we disagree with the trial court's legal conclusion that Dr. Timothy's defense of contributory negligence was frivolous, unreasonable, and groundless.

In conclusion we hold that in a medical negligence action a party is not entitled to an award of prejudgment interest where such an award results in the party recovering more than the maximum amount allowable under the Medical Malpractice Act. Also we conclude that Pettit is not entitled to an award of attorney's fees on grounds that Dr. Timothy failed to introduce expert testimony on the question of standard of care. In addition, we disagree with the trial court's legal conclusion concerning Dr. Timothy's defense of contributory negligence. Accordingly we reverse the judgment of the trial court.

Judgment reversed.

DARDEN, J., and SULLIVAN, J., concur.