EMERGENCY PHYSICIANS OF IN-DIANAPOLIS, W. Larry Corbett, M.D., Methodist Health Care Center d/b/a Methodist Occupational Health Centers, Inc., John W. Timothy, Jr., M.D., and Michael A. Kennedy, M.D., Appellants (Defendants below),

v.

James PETTIT, Appellee (Plaintiff below).

No. 49S02–9911–CV–637.

Supreme Court of Indiana.

Nov. 3, 1999.

David C. Jensen, Hammond, IN, Attorney for Appellants.

Mary A. Findling, Jerry Garau, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

The plaintiff in this medical malpractice case was awarded $750,000 in damages plus pre-judgment interest, attorneys' fees and court costs. The defendant health care providers contend that pre-judgment interest may not be awarded where a plaintiff receives a judgment in the maximum amount recoverable under the medical malpractice act. Following our recent decision in *Poehlman v. Feferman,* we hold that a qualified health care provider is subject to the provisions of the pre-judgment interest statute.

### Background

On May 9, 1996, Pettit sued Methodist Health Care Center d/b/a Methodist Occupational Health Centers, Inc., John W. Timothy, Jr., M.D., and Michael A. Kennedy, M.D. (collectively "Providers"), along with Emergency Physicians of Indianapolis and W. Larry Corbett, M.D. (collectively "Emergency Physicians"), for medical malpractice. All were health care providers qualified under the Indiana Medical Malpractice Act, Ind.Code § 27–12–1–1 et seq. ("Act").[1]

Pettit alleged that Providers and Emergency Physicians were negligent in failing to refer him to a vascular specialist after he exhibited signs and symptoms of an arterial clot in his right leg and that this caused him to lose his right leg to amputation.

Prior to trial on November 21, 1996, Pettit made a settlement offer to Providers in the amount of $75,001.00 with the condition that payment could be made within 60 days of acceptance of the offer. The offer complied with the terms of Indiana's "Pre-judgment Interest Statute." Ind.Code § 34–4–37–1 et seq. (repealed by P.L. 1–1998) (current version at Ind.Code § 34–51–4–1 et seq.). This offer was rejected by Providers.

A jury ultimately returned a verdict in favor of Pettit and against Providers in the amount of $750,000.00. Pettit received an adverse jury verdict on his claim against Emergency Physicians, which he does not challenge in this appeal. In a post-trial motion, Pettit sought pre-judgment interest. Alleging that Dr. Timothy pursued

---

**1.** The Medical Malpractice Act was previously codified at Ind.Code §§ 27–12–1–1 to 27–12–18–2. It was recodified at Ind.Code §§ 34–18–1–1 to 34–18–18–2 in 1998.

defenses at trial that were frivolous, unreasonable, or groundless, Pettit also filed a motion seeking attorneys' fees and costs against Dr. Timothy pursuant to Ind.Code § 34–1–32–1 (repealed by P.L. 1–1998) (current version at Ind.Code § 34–52–1–1).

The trial court granted both motions, awarding Pettit $134,383.92 in pre-judgment interest[2] and $13,305.00 in costs including attorneys' fees. Providers appealed. The Court of Appeals reversed the trial court's determination as to pre-judgment interest, holding that Providers were not responsible for the payment of pre-judgment interest in that the award resulted in Pettit recovering more than the maximum amount recoverable under the Act. The Court of Appeals also reversed the trial court's determination as to attorneys' fees, determining that Pettit was not entitled to this award. *Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111 (Ind.Ct.App.1999).

### Discussion

After the Court of Appeals decided this case, we rendered our opinion in *Poehlman v. Feferman,* 717 N.E.2d 578 (Ind. 1999). In *Poehlman,* we determined the meaning of the phrase "amount recoverable for an injury or death of a patient" as it appears in the Act's recovery limitation section.[3] We recognized that

2. It appears to us that this sum of $134,-383.92 represents pre-judgment interest determined at a rate of 10% on the *entire judgment amount* of $750,000, rather than on the amount of Providers' individual liability of $100,000. (R. at 612; Motion for Prejudgment Interest; R. at 701; Order on Plaintiff's Motion for Prejudgment Interest.). This was in error. *See Discussion, infra.*

3. The relevant text of the recovery limitation section is as follows:

(a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

amounts "recoverable for an injury or death of a patient" [do not] constitute limits on collateral financial obligations associated with litigation generally such as [interest, costs and other expenses]. These collateral litigation expenses arise separately by operation of law and are regulated under distinct statutes, which guide parties' decisions in nearly every stage of either pursuing or defending medical malpractice claims under the Act. To conclude that the statute establishes "solid liability caps" is to create a separate set of rules for the allocation of these expenses in litigating what remain essentially tort suits notwithstanding the passage of the Act.

*Poehlman,* 717 N.E.2d at 581. We also specifically considered the issue of pre-judgment interest and noted that "[i]n any particular case, the health care provider or the Insurance Commissioner may develop an entirely different litigation strategy from the other, including a different strategy as to such matters as *pre-judgment settlement* and post-judgment debt payment." *Id.* at 582 (emphasis added). We ultimately held that

the limitations set forth in the recovery limitation section of the Act are limitations on damage amounts, not collateral litigation expenses; [and] each judgment debtor is *individually responsible* for its

(b) A health care provider qualified under this article is not liable for an amount in excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.

(c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient's compensation fund under IC 27–12–15.

Ind.Code § 27–12–14–3(a)–(c) (1993) (repealed by P.L. 1–1998) (current version at Ind.Code § 34–18–14–3 (1998)). Effective July 1, 1999, the legislature expanded the upper liability limit on damages to "[o]ne million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999." *Id.* § 34–18–14–3 (1998).

own collateral litigation expenses associated with its settlement or judgment figure, irrespective of whether the total figure exceeds the Act's statutory damage limits....

*Id.* at 584 (emphasis in original).

■ We consider our decision in *Poehlman* to be *stare decisis* that a qualified health care provider is responsible for the payment of the collateral litigation expense of pre-judgment interest notwithstanding that the entire amount of the judgment equals the maximum amount recoverable under the Act or that the imposition of pre-judgment interest may cause the provider's total judgment debt to exceed $100,000.

■ And we conclude that *Poehlman's* assignment to each judgment debtor of "individual[ ] responsib[ility] for its own collateral litigation expenses associated with its settlement or judgment figure" means that a provider's responsibility for pre-judgment interest is limited to that amount attributable to its individual liability (in this case, the amount of pre-judgment interest attributable to $100,000).

■ We also note, as we did in a different context in *Poehlman,* that the legislature chose to exempt the Patient's Compensation Fund, but not health care providers, from the provisions of the Pre-judgment Interest Statute. Ind.Code § 34–4–37–4 (1993) ("This chapter does not apply to a claim against the patient's compensation fund ....") (current version at Ind.Code § 34–51–4–2 (1998)).[4] We find this to be persuasive indicia that the legislature considered and rejected exempting qualified health care providers from application of the Prejudgment Interest Statute.

4. The Court of Appeals acknowledged this lone exception for the Fund stating, "The only limitation the prejudgment interest statute places on medical malpractice actions is that

*Conclusion*

■ We (1) grant transfer; (2) adopt and incorporate by reference Part II of the Court of Appeals's opinion addressing the issue of attorneys' fees; (3) vacate the remainder of the opinion of the Court of Appeals; and (4) remand to the trial court for re-computation of that amount of pre-judgment interest (and court costs) attributable to the $100,000 damage award that Providers are responsible for paying.

SHEPARD, C.J., and DICKSON and BOEHM, JJ., concur

prejudgment interest does not apply to claims against the patient's compensation fund." *Emergency Physicians,* 714 N.E.2d at 1114 (citing Ind.Code § 34–51–4–2).