Jerry WOLFE, d/b/a Wolfe Construction, Appellant–Plaintiff and Cross Appellee,

v.

EAGLE RIDGE HOLDING COMPANY, LLC., Appellee–Defendant and Cross Appellant.

No. 61A01–0610–CV–453.

Court of Appeals of Indiana.

July 13, 2007.

Ian A.T. McLean, Crawfordsville, IN, Attorney for Appellant.

Liberty L. Roberts, Collier–Magar & Roberts, P.C. Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Jerry Wolfe d/b/a Wolfe Construction Company ("Wolfe") appeals the trial court's refusal to foreclose a mechanic's lien on property owned by Eagle Ridge Holding Company, LLC ("Eagle Ridge") and awarding of a judgment in favor of Eagle Ridge in the amount of $13,917.14. Eagle Ridge cross-appeals the trial court's refusal to require Wolfe to pay Eagle Ridge's attorney fees.[1] We affirm in part, reverse in part, and remand.

### Issues

The issues before us are:

---

1. There were other named parties in this action but the trial court's judgment only affected Wolfe and Eagle Ridge.

I. whether an accord and satisfaction occurred that fulfilled Eagle Ridge's debt to Wolfe that formed the basis of the mechanic's lien;

II. whether the trial court properly calculated the damages to which Eagle Ridge is entitled based on Wolfe's failure to release the mechanic's lien; and

III. whether the trial court properly concluded that Wolfe was not required to pay Eagle Ridge's attorney fees.

### Facts

In June 2004, Eagle Ridge contracted with Wolfe to construct a building on Eagle Ridge's property, also known as Cox Ford Recreation Park. On October 27, 2004, after completion of the work, Wolfe sent Eagle Ridge a final invoice for $27,031.75. On October 30, 2004, Eagle Ridge sent Wolfe a check for $12,000.00 as partial payment on the final invoice, thus leaving slightly over $15,000.00 unpaid under the invoice. On November 15, 2004, Eagle Ridge sent a check, number 1031, to Wolfe in the amount of $10,461.94. Written on both the front and back of the check were the words, "Full & Final Payment." App. p. 372. The check was accompanied by a "Debit Memorandum" labeled, "Corrections to Final Cox Ford Recreation Park Invoice, dated October 27, 2004." *Id.* at 381. This document listed several areas in which Eagle Ridge believed the final invoice was inaccurate and overcharged Eagle Ridge in the amount of $4,569.81.

Wolfe did not immediately cash check 1031. Instead, on December 10, 2004, Wolfe filed with the Parke County recorder a notice of intention to hold a mechanic's lien against Eagle Ridge's property. On June 8, 2005, Wolfe attempted to cash check 1031. Above Wolfe's endorsement of the check was a stamp stating, "Depos-

ited without prejudice & with full reservation of all rights to balance per IC 26–1–1–207. It is not an accord or [sic] satisfaction...." *Id.* at 372. Eagle Ridge's bank, Fifth Third, refused to cash the check because it was more than six months old. On June 15, 2005, Eagle Ridge sent Wolfe a second check, number 1071, in the amount of $10,461.94. Like check 1031, this check was also marked on the front and back, "Full & Final Payment." *Id.* at 377. This check was accompanied by a letter from Glen Pyle of Eagle Ridge, explaining that it was intended to replace check 1031 and also stating, "I am sending this via certified mail, with return receipt requested, so that I will know that you have received the replacement check, which you can cash and have your complete payment." Ex. 17. Like check 1031, check 1071 also was accompanied by an itemized list reflecting Eagle Ridge's position on how much Wolfe had overcharged Eagle Ridge, though it was slightly different from the earlier list. On June 28, 2005, Wolfe endorsed and cashed check 1071. Wolfe's endorsement this time was not accompanied by any language purporting to reserve the right to collect additional amounts.

Also during June 2005, Eagle Ridge began attempts to obtain a mortgage on the property with Fifth Third, after its earlier construction loan matured. Fifth Third locked in an interest rate of 6.99% for Eagle Ridge while the loan was being negotiated and processed. However, because of the mechanic's lien encumbrance on the property, which resulted in difficulties obtaining title insurance, Fifth Third refused to close on the mortgage.

On September 23, 2005, counsel for Eagle Ridge sent a letter to Wolfe, demanding that the mechanic's lien be released. No earlier demand for release of the lien appears in the record. Wolfe refused to

release the lien. However, in October 2005, Eagle Ridge, Fifth Third, and the title insurance company worked out an agreement whereby Eagle Ridge deposited $6,200.00 in an escrow account and the title insurance policy was issued. The mortgage was closed in November 2005, but since June 2005 the interest rate had increased to 7.5%, adjustable every five years.

On October 24, 2005, Wolfe filed a complaint to foreclose the mechanic's lien. On November 9, 2005, Eagle Ridge filed an answer to the complaint and also filed a counterclaim, alleging that it suffered damages because of Wolfe's refusal to release the lien and because of Wolfe's poor workmanship on the construction project. On September 18, 2006, the trial court entered judgment of $13,917.14 in favor of Eagle Ridge, and against Wolfe on his foreclosure complaint. The $13,917.14 included $1,415.00 on Eagle Ridge's poor workmanship claim[2] and $12,502.14 for Wolfe's refusal to release the mechanic's lien. That amount included $11,622.30 representing the additional interest Eagle Ridge must pay for five years on the Fifth Third mortgage by reason of the interest rate being 7.5% instead of 6.99%, $750.00 in attorney fees Fifth Third charged Eagle Ridge because of being named a defendant in Wolfe's foreclosure suit, and $129.84 representing interest on the $6,200.00 Eagle Ridge had to deposit in escrow in order to close the mortgage. The trial court refused Eagle Ridge's request, made at trial, to require Wolfe to pay its attorney fees because Wolfe's lawsuit allegedly was frivolous. Wolfe now appeals, and Eagle Ridge cross-appeals.

## Analysis

Because no request for findings and conclusions from either party appears in the record, the trial court's entry of such was sua sponte. Under such circumstances, we will not set aside the findings and judgment unless clearly erroneous. *Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind.Ct. App.2006). A judgment is clearly erroneous if there is no evidence supporting the findings, or the findings fail to support the judgment, or if the trial court applies the wrong legal standard to properly found facts. *Id.* Although we review findings of fact under the clearly erroneous standard, we do not defer to conclusions of law, which are reviewed de novo. *Id.* Because the findings and conclusions here were issued sua sponte, they control only the issues they cover, and we will apply a general judgment standard to any issues about which the court did not make findings. *Id.*

### I. Accord and Satisfaction

 Wolfe's first argument is that the trial court erred in concluding that "an accord and satisfaction was made" when he cashed check 1071 from Eagle Ridge in the amount of $10,461.94, thus extinguishing the debt that had formed the basis for the mechanic's lien. App. p. 16. "The term 'accord' denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated, and the term 'satisfaction' denotes performance of the contract." *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind.Ct.App. 1994). The question of whether the party claiming accord and satisfaction has met its burden is ordinarily a question of fact but becomes a question of law if the requisite controlling facts are undisputed and clear. *Id.*

We begin by noting that Wolfe's endorsement of check 1031, which Fifth Third refused to cash because it was over

---

**2.** Wolfe does not challenge this award on appeal.

six months old, was accompanied by a stamp claiming that Wolfe was reserving his right to collect the remainder of any debt still owing from Eagle Ridge after cashing of the check, pursuant to Indiana Code Section 26–1–1–207. That statute, however, does not govern claims of accord and satisfaction. *See* Ind.Code § 26–1–1–207(2). In fact, the official comment to this section of the Uniform Commercial Code ("UCC") expressly states:

> Section 3–311 of revised Article 3 governs if an accord and satisfaction is attempted by tender of a negotiable instrument as stated in that section. If Section 3–311 does not apply, the issue of whether an accord and satisfaction has been effected is determined by the law of contract. Whether or not Section 3–311 applies, Section 1–207 has no application to an accord and satisfaction.

I.C. § 26–1–1–207, cmt. 3.

Thus, although neither of the parties nor the trial court mentioned it, Section 3–311 of Article 3 of the UCC is the controlling statute in this case because Eagle Ridge attempted an accord and satisfaction by tender of a negotiable instrument, i.e. a check. This provision is codified in Indiana at Indiana Code Section 26–1–3.1–311 and states:

> (a) If a person against whom a claim is asserted proves that:
>
> (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;
>
> (2) the amount of the claim was unliquidated or subject to a bona fide dispute; and
>
> (3) the claimant obtained payment of the instrument;
>
> the following subsections apply.
>
> (b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> (c) Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:
>
> (1) The claimant, if an organization, proves that:
>
> (A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and
>
> (B) the instrument or accompanying communication was not received by that designated person, office, or place.
>
> (2) The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This subdivision does not apply if the claimant is an organization that sent a statement complying with subdivision (1)(A).
>
> (d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

We quote at length from the official comment to this provision of the UCC:

> 1. This section deals with an informal method of dispute resolution carried out

by use of a negotiable instrument. In the typical case there is a dispute concerning the amount that is owed on a claim.

Case # 1. The claim is for the price of goods or services sold to a consumer who asserts that he or she is not obliged to pay the full price for which the consumer was billed because of a defect or breach of warranty with respect to the goods or services.

\* \* \* \* \* \*

In either case the person against whom the claim is asserted may attempt an accord and satisfaction of the disputed claim by tendering a check to the claimant for some amount less than the full amount claimed by the claimant. A statement will be included on the check or in a communication accompanying the check to the effect that the check is offered as full payment or full satisfaction of the claim. Frequently, there is also a statement to the effect that obtaining payment of the check is an agreement by the claimant to a settlement of the dispute for the amount tendered....

2. Comment d. to Restatement of Contracts, Section 281 discusses the full satisfaction check and the applicable common law rule. In a case like Case # 1, the buyer can propose a settlement of the disputed bill by a clear notation on the check indicating that the check is tendered as full satisfaction of the bill. Under the common law rule the seller, by obtaining payment of the check accepts the offer of compromise by the buyer. *The result is the same if the seller adds a notation to the check indicating that the check is accepted under protest or in only partial satisfaction of the claim. Under the common law rule the seller can refuse the check or can accept it subject to the condition stated by the buyer, but the seller can't accept the check and refuse to be bound by the condition.* The rule applies only to an unliquidated claim or a claim disputed in good faith by the buyer. The dispute in the courts was whether Section 1–207 changed the common law rule. The Restatement states that section "need not be read as changing this well-established rule."

3. As part of the revision of Article 3, Section 1–207 has been amended to add subsection (2) stating that Section 1–207 "does not apply to an accord and satisfaction." Because of that amendment and revised Article 3, Section 3–311 governs full satisfaction checks. Section 3–311 follows the common law rule with some minor variations to reflect modern business conditions. In cases covered by Section 3–311 there will often be an individual on one side of the dispute and a business organization on the other. This section is not designed to favor either the individual or the business organization.... *Section 3–311 is based on a belief that the common law rule produces a fair result and that informal dispute resolution by full satisfaction checks should be encouraged.* I.C. § 26–1–3.1–311, cmt. 1–3 (emphases added).

In the present case, the undisputed facts are that Eagle Ridge tendered a "full satisfaction check" to Wolfe that was conspicuously marked on the front and back as being for full and final payment of Eagle Ridge's outstanding debt to Wolfe, and which was accompanied by other correspondence indicating that the check was intended as full and final payment. There is no indication the check was not tendered in good faith. There clearly was a bona fide dispute over the amount Eagle Ridge owed Wolfe. Wolfe chose to cash this check. Under the plain language of

Indiana Code Section 26–1–3.1–311(b) and the accompanying official commentary, this constituted, as a matter of law, full discharge of Wolfe's claim against Eagle Ridge. Neither of the only exceptions against full discharge, found in subsection (c) of Section 311, applied here. Even if Wolfe had been successful in cashing check 1031, Wolfe's endorsement of which purported to reserve his rights against Eagle Ridge, instead of check 1071, the endorsement of which had no such language, Eagle Ridge's debt to Wolfe would have been discharged fully. Section 311 provides a bright-line rule in this regard, and Wolfe's cashing of Eagle Ridge's clearly marked "full satisfaction check" operated as an accord and satisfaction.[3] After cashing of the check, there no longer was a debt to support a mechanic's lien against Eagle Ridge's property. We affirm the judgment against Wolfe on its complaint to foreclose the mechanic's lien.[4]

## II. Damages

■ Wolfe argues that even if there was an accord and satisfaction that extinguished the debt supporting the mechanic's lien, the trial court erred in its calculation of damages stemming from Wolfe's failure to release the lien. Eagle Ridge sought and the trial court awarded damages under Indiana Code Section 32–28–6–1, which provides in part:

(a) If:

(1) a person owns or has an interest in real estate to which a mechanic's lien has been attached; .

(2) the debt secured by the lien has [been] satisfied or paid; and

(3) the person who owns or has an interest in the encumbered real estate demands that the lien be released;

the lienholder shall release the lien within fifteen (15) days after the demand.

(b) If the lienholder does not release the lien within fifteen (15) days after the demand, the lienholder is liable to the person who owns or has an interest in the real estate to which the mechanic's lien has been attached for the greater of:

(1) actual damages; or

(2) liquidated damages in the sum of ten dollars ($10) per day from the fifteenth day until the release or expiration of the lien....

When interpreting a statute, our objective is to determine and effect the intent of the legislature. *Pabey v. Pastrick*, 816 N.E.2d 1138, 1148 (Ind.2004). We will not presume that statutory language " 'is meaningless and without a definite purpose' " but must seek to give effect " 'to every word and clause.' " *Id.* (quoting *Combs v. Cook*, 238 Ind. 392, 397, 151 N.E.2d 144, 147 (1958)). If a statute is clear and unambiguous, the words and phrases it contains must be taken in their plain, ordinary, and usual sense. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154, 157 (Ind.2005).

**3.** Both of the parties discuss this court's decision in *Mominee* at length. *Mominee* does not cite or discuss Section 311 of Article 3 of the UCC, which was adopted in Indiana after the events of that case. Nevertheless, its analysis is consistent with that statute and, indeed, would appear to reflect the common law rule mentioned in the official UCC commentary to the statute, namely that checks clearly tendered in good faith as full satisfaction of a claim work an accord and satisfaction if the creditor cashes the check, regardless of whether the creditor attempts to reserve rights to collect more than the amount of the check. *See Mominee*, 629 N.E.2d at 1284.

**4.** It does not appear from the trial court's order that it directed release of the mechanic's lien, although Eagle Ridge sought such affirmative relief. On remand, the trial court may wish to enter such an order.

■ We conclude the language of this statute is clear, and requires that a demand for release of a mechanic's lien must be made before damages, either actual or liquidated, may begin to accrue to the lienholder for refusal to release the lien. Mere payment of the underlying debt by itself is not sufficient; otherwise, subsection (a)(3), explicitly requiring a demand for release, would be surplusage. Interpreting a statute in such a way as to render some of it mere surplusage would violate standard principles of statutory construction. *See Corr v. American Family Ins.*, 767 N.E.2d 535, 540 (Ind.2002). Moreover, subsection (b) of the statute expressly provides a fifteen-day "grace period" for responding to a request to release a mechanic's lien, and it is *only* after that period that damages for wrongfully refusing to release a lien begin to accrue. If damages began to accrue from the moment the debt underlying a mechanic's lien was paid in full, the statute's demand requirement and "grace period" effectively would be rendered a nullity. The legislature certainly could have drafted this statute differently and omitted the demand requirement, but it did not.

■ The earliest evidence in the record of a demand by Eagle Ridge to Wolfe that the mechanic's lien be released, as found by the trial court, is a letter from Eagle's Ridge's attorney to Wolfe dated September 23, 2005. Eagle Ridge does not direct us to any evidence or make any argument that it made a demand at an earlier time. The correspondence accompanying check 1071, sent in June 2005 which we have held extinguished the debt supporting the mechanic's lien, made no mention of the lien. Thus, the earliest date that damages against Wolfe for failing to release the lien could have begun to accrue would have been on or about October 8, 2005, or fifteen days after September 23. Eagle Ridge, however, sought and obtained damages based upon the failure to close the Fifth Third mortgage in June 2005 with the locked-in interest rate of 6.99%. Under Indiana Code Section 32–28–6–1, this was clearly erroneous as a matter of law because no demand for release of the lien had been made at that time.[5]

We reverse the trial court's judgment in Eagle Ridge's favor to the extent of $11,622.30, which represents the additional interest payments on the Fifth Third mortgage because of the rate increase between June and October 2005. We remand for recalculation of Eagle Ridge's actual damages sustained after October 8, 2005, based on Wolfe's refusal to release the mechanic's lien, or to award liquidated damages in accordance with the statute.[6]

### III. Cross–Appeal: Attorney Fees

■ We now address Eagle Ridge's cross-appeal claim that Wolfe is required

---

5. Eagle Ridge seems to claim Wolfe waived any argument that he cannot be held liable for the increase in interest rates between June and October 2005 because he did not object when Eagle Ridge introduced a document indicating its increased mortgage payments due to the higher rate. Wolfe does not claim error in the introduction of this exhibit, however; he only challenges the propriety of the damages award as a matter of law. He did not waive that argument by not objecting to the exhibit.

6. Wolfe does not argue that the $129.84 awarded Eagle Ridge, representing interest on the $6,200.00 it had to place in escrow to close the mortgage, was improperly assessed. It also appears to us that the $750.00 Fifth Third charged Eagle Ridge for being named a defendant in Wolfe's foreclosure suit also constitutes "actual damages" resulting from Wolfe's failure to release the mechanic's lien after being demanded to do so. Eagle Ridge is not entitled to those amounts, however, if the total amount of liquidated damages exceeds the total amount of properly calculated actual damages. *See* I.C. § 32–28–6–1(b).

to pay its attorney fees in this matter. Eagle Ridge contends it is entitled to attorney fees under Indiana Code Section 34–52–1–1(b), which provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

A three-tiered approach to reviewing a trial court's decision under this statute has developed. First, we review the trial court's findings of fact, if any, under the clearly erroneous standard; second, we review de novo the trial court's legal conclusions; and third, we review the trial court's decision whether to award attorney's fees and any amount thereof under an abuse of discretion standard. *Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111, 1115 (Ind.Ct.App.1999), adopted in relevant part, 718 N.E.2d 753, 757 (Ind.1999). This court specifically has reviewed de novo a trial court's determination regarding whether a party has pursued frivolous, unreasonable, or groundless defenses or claims. *See id.*

Ultimately, however, a trial court has discretion to award, or not award, attorney fees under Indiana Code Section 34–52–1–1(b). *See Nelson v. Marchand,* 691 N.E.2d 1264, 1269 (Ind.Ct.App.1998). It is axiomatic that use of the permissive word "may" in a statute indicates a trial court is not required to act, but may do so within its discretion. *See, e.g., Wenzel v. Hopper & Galliher, P.C.,* 830 N.E.2d 996, 1003 (Ind.Ct.App.2005). Thus, in the present case even if the trial court should have concluded that Wolfe's claims and defenses were frivolous, it still would not have been required to award attorney fees to Eagle Ridge. *See Kahn v. Cundiff,* 533 N.E.2d 164, 172 (Ind.Ct.App.1989), *adopted,* 543 N.E.2d 627, 629 (Ind.1989) (stating, after concluding that appellant had made frivolous, unreasonable, or groundless arguments, that "the trial court *could* have awarded attorney fees" under the predecessor to Indiana Code Section 34–52–1–1(b) (emphasis added)).

Eagle Ridge contends that Wolfe's insistence that his cashing of check 1071 did not constitute an accord and satisfaction and his subsequent lawsuit seeking to foreclose the mechanic's lien were and are "frivolous." It directs us to the following finding of the trial court:

> 54. Jerry Wolfe admitted that Wolfe Construction Company had accepted Check No. 1071, which was clearly marked as full and final payment. He testified that despite having accepted the check, he pursued his claim for a Mechanic's Lien because he did not believe the terms should apply to him, even though he cashed the check and knew that it was intended as full and final payment. Wolfe's attorney did not offer any legal argument as to why the terms of the check did not apply to Wolfe Construction or argue for an extension or modification of the existing laws regarding accord and satisfaction.

App. p. 15. The record does not indicate that this finding is clearly erroneous. Given this, Eagle Ridge contends that the findings do not support the trial court's conclusion, "This lawsuit was not a frivolous lawsuit as contemplated by Indiana Code 34–52–1–1 and each party shall be responsible for their own attorney fees." *Id.* at 17. Instead, Eagle Ridge contends finding 54 compels the opposite conclusion, that Wolfe's lawsuit was frivolous.

As indicated, we review the trial court's conclusion regarding frivolousness de novo. *See Pettit*, 714 N.E.2d at 1115. A claim or defense is "frivolous" (a) if it is made primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer does not make a good faith and rational argument on the merits of the action, or (c) if the lawyer does not support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Kahn*, 533 N.E.2d at 170. Finding 54 seems to indicate that Wolfe's claim regarding accord and satisfaction was "frivolous" under this definition because his attorney failed to present any legal argument for an extension or modification of existing law that would conclusively demonstrate that there was an accord and satisfaction when Wolfe cashed check 1071. We note, however, that accord and satisfaction is not a frequently litigated issue in this state. Neither of the parties nor the trial court cited to Indiana Code Section 26–1–3.1–311, which as we held earlier controls the outcome of this case. That statute has been on the books for fourteen years and we believe this is the first Indiana appellate court opinion to cite it.

Even if we were to hold that Wolfe's claim that there was no accord and satisfaction was frivolous, this would not require Wolfe to pay Eagle Ridge's attorney fees in this matter. Despite the lack of support for Wolfe's accord and satisfaction argument as recognized by the trial court, it still believed this case did not call for Wolfe to pay Eagle Ridge's attorney fees. We review that ultimate decision for an abuse of discretion. "A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 223 (Ind.Ct.App.2006). We also note that we may affirm the trial court's decision regarding attorney fees on any legal theory supported by the findings, if we are confident that affirmance is consistent with all of the trial court's findings and inferences drawn from them. *See E & L Rental Equip., Inc. v. Wade Constr., Inc.*, 752 N.E.2d 655, 658 (Ind.Ct.App. 2001). The rule regarding affirmance based on any legal theory should apply with additional force where the trial court entered findings sua sponte and was not required to do so.

The accord and satisfaction issue was only one of several issues that was litigated in this case. There also was the question of the amount of damages to which Eagle Ridge was entitled if there was an accord and satisfaction, based on Wolfe's failure to release the mechanic's lien. Eagle Ridge does not claim that Wolfe's arguments in that regard were frivolous, and indeed Wolfe has substantially prevailed on that issue on appeal. Additionally, Eagle Ridge sought and obtained damages based on its claim that it suffered damages because of Wolfe's substandard work; Eagle Ridge does not claim that Wolfe's defenses on that point were frivolous. Wolfe did not challenge that award on appeal.

In other words, Eagle Ridge incurred attorney fees in litigating a variety of issues, only one of which might be classified as frivolous and would permit it to recover attorney fees. However, the itemized bills from Eagle Ridge's attorney do not differentiate between time spent on the allegedly frivolous claim and the non-frivolous claims or defenses of Wolfe. Eagle Ridge has not attempted to make such a differentiation, and it is not clear how simple it would be to make it. Under the circumstances, we cannot say that the failure to award attorney fees to Eagle Ridge was clearly against the logic and effect of the facts and circumstances before the trial

court. We affirm the denial of Eagle Ridge's attorney fees request.

### Conclusion

The trial court properly concluded there was an accord and satisfaction when Wolfe cashed Eagle Ridge's check 1071. However, it erred in calculating the damages to which Eagle Ridge is entitled based on Wolfe's failure to release the mechanic's lien and we remand for recalculation of those damages. We also cannot say the trial court's denial of Eagle Ridge's attorney fees request constituted an abuse of discretion. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and RILEY, J., concur.