


FILED

Mar 27 2024, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Ciera Mayes,

*Appellant-Defendant*

v.

Goldman Sachs Bank USA,

*Appellee-Plaintiff*

---

March 27, 2024

Court of Appeals Case No.
23A-CC-1604

Appeal from the Dearborn Superior Court

The Honorable Jonathan Neil Cleary, Judge

Trial Court Cause No.
15D01-2107-CC-318

---

**Opinion by Chief Judge Altice**
Judges Weissmann and Kenworthy concur.

**Altice, Chief Judge.**

## Case Summary

Ciara Mayes executed an Installment Loan Agreement (Loan Agreement) with Goldman Sachs Bank USA (the Bank) for a personal loan. After about six months of nonpayment, the Bank advised Mayes by letter that it was seeking collection of $9,235.30 owed on the loan. Mayes thereafter sent a $200 check and accompanying letter to the Bank, stating that cashing of the check would be "considered settlement in full" of the still-outstanding balance. *Appendix* at 80. The Bank cashed the check. The Bank subsequently filed a breach of contract action against Mayes on the Loan Agreement, and she counterclaimed, asserting various claims on the basis that the matter had been settled. The parties filed respective motions for summary judgment. The trial court summarily granted the Bank's motion and entered judgment in favor of the Bank on its complaint and against Mayes on her counterclaims. Mayes appeals and raises the following restated issues:

> 1. Did the Bank, by cashing the $200 check, enter into a settlement agreement with Mayes where the terms of the Loan Agreement provided that it could not be altered or modified except by written instrument and that partial payments received and negotiated would have no effect on the terms of the Loan Agreement?

> 2. Did Mayes satisfy Indiana's requirements as provided in Ind. Code § 26-1-3.1-311 for an accord and satisfaction?

> 3. Was the Bank entitled to summary judgment on its breach of contract claim?

We affirm.

## Facts & Procedural History

In February 2018, Mayes entered into the Loan Agreement with the Bank, in which the Bank agreed to lend Mayes the principal sum of $20,000 plus interest, which she agreed to repay along with, if applicable, late charges, returned payment charges, and reasonable costs of collection. As is relevant here, the Agreement contained the following provisions:

> 7.b. Waivers.
>
> . . . [N]o alteration, amendment or waiver of any provision of this agreement or any other document or agreement relating to the Loan or this Agreement, shall release, modify, amend, waive, extend, change, discharge, terminate or affect your unconditional liability, except to the extent explicitly agreed pursuant to Section 13.
>
> * * *
>
> 13. Amendment.
>
> Except as otherwise provided herein, this Agreement may not be amended, modified or limited except by a written agreement.
>
> * * *
>
> 21. Partial Payments Marked Payment in Full.

We may process a late payment, a partial payment or a payment marked with any restrictive language. If we do, that action will have no effect on our rights and the restrictive language will have no force or effect.

*Id*. at 21, 22, 25.

[4] On July 31, 2020, a law firm sent a letter (Collection Letter) to Mayes advising that it had been retained by the Bank to assist in the collection of funds that she owed the Bank under the Loan Agreement and stating that the current balance was $9,235.30. The letter stated:

Please note that unless you dispute said debt, or any portion thereof within thirty (30) days after your receipt of this letter, this firm shall assume the validity of this debt.

*Id*. at 77. The letter also directed Mayes to "[p]lease contact this law firm to discuss repayment[.]" *Id*.

[5] About six months later, on January 18, 2021, Mayes's attorney sent a letter to the Bank advising that she had been retained by Mayes "to assist in the matter of debt relief." *Id*. at 80. The letter further stated:

My client disputes the debt. However, in an effort to resolve this matter without filing bankruptcy, I'm enclosing a check for $200.00. If you cash this check for the disputed debt, it will be considered settlement in full. If you do not cash the check, this debt may be included in a bankruptcy. Do not cash this check if you do not want to resolve this account in full.

*Id*. Enclosed with the letter was a check payable to the Bank in the amount of $200, and in the memo section of the check was typed "Settlement Marcus[1] for Ciera". *Id*. at 81. The Bank received and processed the check.

[6] On July 14, 2021, the Bank filed a complaint against Mayes, alleging that Mayes breached the Loan Agreement because she failed to make monthly installment payments as required. The Bank stated that, pursuant to its contractual right to accelerate the time for repayment, it was declaring "the entire balance due," and it asked the trial court for entry of judgment against Mayes in the amount of $9,035.30. *Appendix* at 12. The complaint attached and incorporated an Affidavit of Debt,[2] which in turn attached exhibits, including the Loan Agreement and account statements. The Affidavit of Debt indicated that the loan had been "charged-off" in May 2020 but that a $200 payment on the loan had posted on January 27, 2021. *Id*. at 13.

[7] Mayes filed an answer, denying that she had failed to make payments and was in default. She asserted eight affirmative defenses, including that the Bank received "partial and/or total satisfaction with respect to the damages complained of . . . and the settlement prevents them from asserting this claim." *Id*. at 47. In addition, Mayes asserted counterclaims for breach of contract,

---

[1] "Marcus" is another name for the Bank, as the Loan Agreement sometimes identifies the lender as "Marcus: By Goldman Sachs." *Appendix* at 16.

[2] The Affidavit of Debt indicated that interest and fees, permissible under the Loan Agreement, were no longer being charged to the account and that the Bank was not seeking attorney's fees or post-judgment interest.

criminal harassment under Ind. Code § 35-45-2-2, and treble damages pursuant to Ind. Code § 34-24-3-1 for violation of Ind. Code Article 35-43.[3] The counterclaims were grounded in allegations that Mayes "settled with [the Bank]" because it "accepted payment for a disputed debt and resolved this account," and it was "suing on a debt that had been satisfied" and thereby was "attempting to collect on a debt twice." *Id*. at 48-49.

[8] The Bank filed an answer, denying all counterclaims, and later filed a motion to dismiss the counterclaims. The motion to dismiss asserted that Mayes's tendered check for $200 did not modify or alter the Loan Agreement's terms. It also stated that, although the Bank had sent Mayes the Collection Letter in July 2020 directing her to contact a representative to discuss repayment, "[n]o correspondence disputing the debt or requesting information was ever received from Mayes." *Id*. at 56. For these and other reasons, the Bank argued that Mayes's accord and satisfaction claim failed, as did her counterclaims alleging that the Bank was attempting to collect a debt that had been settled and was harassing her. Following a hearing, the trial court denied the Bank's motion to dismiss.

[9] In March 2023, the Bank filed a motion for summary judgment. It designated an Affidavit and Certification of Amount Owed, authored by a legal operations analyst for the Bank. Attached as exhibits to the Affidavit were (1) the Loan

---

[3] Article 43 concerns "Offenses Against Property" and includes theft and conversion and some types of fraud.

Agreement, (2) account statements on the loan, and (3) a loan history summary reflecting monthly payments through December 2019 and none thereafter. The Affidavit averred that due and owing to the Bank was the sum of $9,035.30. The Bank's motion and subsequent reply argued that by applying for and accepting the $20,000 loan funds, Mayes agreed to be bound by the terms of the Loan Agreement, including the provisions in Paragraphs 13 and 21 that the agreement could not be "amended, modified, or limited except by a written agreement" and that processing a late or partial payment marked with restrictive language would have "no effect on [the Bank's] rights." *Id*. at 229-30.

[10] Mayes filed a response as well as her own motion for summary judgment. She asserted that by "accept[ing] [the $200] payment" – with the memo line of the check indicating it was "Settlement" and the accompanying letter stating "if you cash this check for the disputed debt, it will be considered settlement in full" – the Bank thereby accepted the terms of the new contract "through performance," which "satisf[ied] Mayes' debt." *Id*. at 211. Mayes argued that she and the Bank thus "had a contract" and that the Bank breached that contract by suing on the debt that had been fully satisfied. *Id*. (citing to and quoting from her January 18, 2021 letter to Bank). Mayes argued that the Bank's motion for summary judgment should be denied, and judgment should be granted in her favor, because (1) the Bank accepted a settlement agreement with Mayes, which the Bank then breached when it filed suit, and (2) the requirements of accord and satisfaction found in I.C. § 26-1-3.1-311 had been

satisfied. In support of her motion for summary judgment, Mayes designated the Bank's complaint, her counterclaims, the Bank's motion to dismiss, her $200 check and January 18, 2021 letter to the Bank.

[11] Following a hearing,[4] the trial court summarily granted the Bank's motion for summary judgment, entering judgment in favor of the Bank in the amount of $9,035.30 and entering judgment in the Bank's favor on Mayes's counterclaims. Mayes now appeals.

## Discussion & Decision

### Standard of Review

[12] Summary judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Rossner v. Take Care Health Sys., LLC*, 172 N.E.3d 1248, 1254 (Ind. Ct. App. 2021), *trans. denied.* We have observed that "[s]ummary judgment may be particularly appropriate in contract disputes, as interpretation of a contract presents a question of law and is reviewed de novo." *Sapp v. Flagstar Bank, FSB*, 956 N.E.2d 660, 663 (Ind. Ct. App. 2011).

[13] In reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046 (Ind. Ct. App. 2003). Summary judgment should be granted

---

[4] A transcript of the hearing is not included in the record.

only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The moving party bears the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law; once this burden has been met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial and cannot rest upon the allegations or denials in the pleadings. *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 143 (Ind. Ct. App. 2004).

> On appeal, the trial court's grant of a motion for summary judgment is clothed with a presumption of validity, and the party that lost in the trial court has the burden of persuading the appellate tribunal that the grant of summary judgment was erroneous. We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. A grant of summary judgment may be affirmed upon any theory supported by the designated materials.

*Id*. (citations omitted). Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Sapp,* 956 N.E.2d at 663. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id*.

### 1. Mayes's Motion for Summary Judgment – New Contract

[14] Mayes claims that she is entitled to summary judgment on her counterclaims because she and the Bank "agreed to a settlement and new contract" when the

Bank processed the $200 check. *Appellant's Brief* at 4. She continues that, because the debt that was the subject of the complaint had been satisfied through "a binding settlement agreement," the Bank breached this new contract when it filed a complaint against her and/or was harassing her to collect on a satisfied debt. *Id.*

[15] Acknowledging that Paragraph 21 of the Loan Agreement provides that cashing a partial-payment check with restrictive language does not alter the terms of the Loan Agreement, Mayes points out that she "is not arguing a change in agreement occurred by the mere fact that the check [had] restrictive language [about settlement] on the memorandum line." *Id.* at 6. Rather, her argument is that the Bank "accept[ed] the explicit terms of the offer and acceptance" that was stated in the January 18, 2021 letter, and the Bank should not be able to "renege with impunity" by filing the complaint against her months after acceptance. *Id.* at 6; *Reply Brief* at 4.

[16] Mayes's argument is founded on the premise that the Bank accepted the offer to settle through performance, namely "by cashing the check." *Appellant's Brief* at 9. This position ignores Paragraph 13 of the Loan Agreement that provides that its terms may not be amended, modified or limited except by a written agreement. Here, there is no new written agreement. Under the circumstances of this case, we decline to find that Mayes and the Bank entered into a new contract to settle the outstanding loan balance for $200.

## 2. Mayes's Motion for Summary Judgment - Accord and Satisfaction

[17] Alternatively, Mayes asserts that she is entitled to summary judgment because the Bank's claim was discharged through an accord and satisfaction. The term "accord" denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated, and the term "satisfaction" denotes performance of the contract. *Wolfe v. Eagle Ridge Holding Co., LLC.*, 869 N.E.2d 521, 524 (Ind. Ct. App. 2007) (some quotations omitted). The question of whether the party claiming accord and satisfaction has met its burden is ordinarily a question of fact but becomes a question of law if the requisite controlling facts are undisputed and clear. *Id.*

[18] We have recognized that I.C. § 26-1-3.1-311[5] (Section 311) governs where a party attempts an accord and satisfaction by tender of a negotiable instrument. *See Wolfe*, 869 N.E.2d at 525. Section 311 provides that if a person against whom a claim is asserted proves:

> (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;
>
> (2) the amount of the claim was unliquidated or subject to a bona fide dispute; and
>
> (3) the claimant obtained payment of the instrument

---

[5] This statute is Indiana's codification of Section 3-311 of the Uniform Commercial Code. *See Wolfe*, 869 N.E.2d at 525.

then the claim is discharged "if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." I.C. § 26-1-3.1-311(a), (b).

[19] Mayes contends that she satisfied the requirements of Section 311 but we disagree. There is no dispute that Mayes's check and accompanying letter includes the "conspicuous statement" about being tendered as full satisfaction of the claim. However, we are hard pressed to accept the suggestion that an offer to settle a $9,235 loan balance for $200 was tendered in "good faith," given the great disparity in the two amounts as well as because the Loan Agreement contained language indicating that partial or late payments would not affect the Bank's rights under the Loan Agreement.

[20] Even assuming that the tender was made in good faith, Mayes did not "prove" that the debt "was unliquidated or subject to a bona fide dispute." I.C. § 26-1-3.1-311(a)(2). First, the balance owed was not unliquidated – that is, one that is uncertain and not definite or fixed[6] – as correspondence from the Bank as well as the complaint advised Mayes of the specific amount due and owing with supporting account statements.[7] Second, Mayes did not prove that the debt was

---

[6] *See Gearhart v. Baker*, 393 N.E.2d 258, 260 (Ind. Ct. App. 1979) (comparing a claim that is "liquidated, definite, and fixed" to an "unliquidated" claim that is "uncertain in nature" because it is "subject to a good faith dispute").

[7] Mayes asserts that the Bank "admitted that the claim is unliquidated" in its motion to dismiss. *Appellant's Brief* at 10. In arguing that Mayes failed to satisfy Section 311, the motion read, "not only is the claim unliquidated, but [Mayes] also cannot establish that [the Bank]'s claim is subject to a bona fide dispute."

subject to a bona fide dispute. On this point, we agree with the Bank that her attorney's singular statement in the January 18, 2021 letter that "my client disputes this debt" does not prove, or even provide evidence of, a bona fide dispute. *Appendix* at 80. Accordingly, Mayes did not prove that an accord and satisfaction occurred when the Bank cashed her $200 check.

[21] Having failed to establish either (i) that the parties entered into a new contract, namely a settlement agreement, or (ii) that the debt was satisfied through accord and satisfaction, Mayes has not shown that the Bank engaged in criminal harassment or committed violations of I.C. Art. 35-43 that would entitle her to treble damages under I.C. § 34-24-3-1. Accordingly, Mayes was not entitled to summary judgment on her counterclaims against the Bank.

## 3. Bank's Motion for Summary Judgment – Breach of Contract

[22] We next address whether the Bank was entitled to summary judgment on its breach of contract claim. The essential elements of a breach of contract action are the existence of a contract, a breach of it, and damages. *Wilson*, 790 N.E.2d at 1048. In support of its motion for summary judgment, the Bank designated as evidence: an Affidavit of amount owed; the Loan Agreement; monthly statements; and a summary chart that was sent to Mayes in February 2022, reflecting that she had made monthly payments through December 2019 but had made no payments thereafter other than a credit of the $200 in January

---

*Appendix* at 57. It is evident, based on phrasing and broader context, that the Bank intended to state that the debt was *not* unliquidated.

2021, for an owed balance, including interest, of $9,035.30. The designated materials established that the parties entered into a contract for Mayes to borrow money, Mayes accepted the disbursed funds, she failed to repay as required, and the Bank suffered damages as a result. The Bank thereby showed that it was entitled to judgment as a matter of law on its breach of contract claim.

[23] As the Bank met that burden, it was incumbent on Mayes to respond with specific facts demonstrating a genuine need for trial. *See Kruse*, 815 N.E.2d at 143. She has not done so. While Mayes designated her attorney's letter to the Bank, stating the words "My client disputes the debt," neither the letter nor any other designated evidence indicates that she had in fact paid or, if not, on what basis she was not required to pay. The only evidence in the record is that Mayes agreed to make monthly installment payments, did so for a time, then stopped. The Bank thus established that Mayes breached the contract and that it suffered damages. Mayes has not met her burden to establish that the grant of summary judgment in favor of the Bank on its breach of contract claim was erroneous.

[24] Judgment affirmed.

Weissmann, J. and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Julie A. Camden
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Ian R. Flora
South Bend, Indiana

Kara James
Indianapolis, Indiana